**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:17-CV-23227**

| | |
|---|---|
| **JAMES ERIC MCDONOUGH and** )<br>**VANESSA MCDONOUGH** )<br>      **Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**CITY OF HOMESTEAD, a** )<br>**Florida Municipal Corporation;** )<br> )<br>**JEFF PORTER, Individually, and in his** )<br>**capacity as Mayor of the City of** )<br>**Homestead; Homestead, Florida;** )<br> )<br>**GEORGE GRETSAS, Individually, and** )<br>**in his capacity as City Manager of the** )<br>**City of Homestead; Homestead, Florida;** )<br> )<br>**ALEXANDER ROLLE, Individually,** )<br>**and in his capacity as the Chief of Police** )<br>**for the Homestead Police Department of** )<br>**the City of Homestead; Homestead,** )<br>**Florida;** )<br> )<br>**ANTONIO AQUINO, Individually, and** )<br>**in his capacity as Internal Affairs** )<br>**Detective for the Homestead Police** )<br>**Department of the City of Homestead;** )<br>**Homestead, Florida;** )<br> )<br>**ALEJANDRO MURGUIDO,** )<br>**Individually, and in his capacity as Police** )<br>**Officer for the Homestead Police** )<br>**Department of the City of Homestead;** )<br>**Homestead, Florida;** )<br> )<br>**J. CRUZ, Individually, and in his** )<br>**capacity as Police Officer for the** )<br>**Homestead Police Department of the** )<br>**City of Homestead; Homestead, Florida;** )<br> ) | **JURY TRIAL DEMANDED** |

**DAVID SNYDER, Individually, and in** )
**his capacity as Police Officer for the** )
**Homestead Police Department of the** )
**City of Homestead; Homestead, Florida;** )
                                            )
**JOHN BUCHANAN, Individually, and in** )
**his capacity as Police Officer for the** )
**Homestead Police Department of the** )
**City of Homestead; Homestead, Florida;** )
                                            )
**M. PASQUARELLA, Individually, and** )
**in his capacity as Police Officer for the** )
**Homestead Police Department of the** )
**City of Homestead; Homestead, Florida;** )
                                            )
**L. ZAVALETA, Individually, and in his** )
**capacity as Police Officer for the** )
**Homestead Police Department of the** )
**City of Homestead; Homestead, Florida;** )
                                            )
**THOMAS MEAD, Individually, and in** )
**his capacity as Police Officer for the** )
**Homestead Police Department of the** )
**City of Homestead; Homestead, Florida;** )
                                            )
**MARIO ARZUAGA, Individually, and in** )
**his capacity as Police Officer for the** )
**Homestead Police Department of the** )
**City of Homestead; Homestead, Florida;** )
                                            )
**VERONICA BLANCO, Individually,** )
**and in her capacity as Police Officer for** )
**the Homestead Police Department of the** )
**City of Homestead; Homestead, Florida;** )
                                            )
**A. PEARCE, Individually, and in his** )
**capacity as Police Officer for the** )
**Homestead Police Department of the** )
**City of Homestead; Homestead, Florida;** )
                                            )
**THOMAS SURMAN, Individually, and** )
**in his capacity as Police Officer for the** )
**Homestead Police Department of the** )
**City of Homestead; Homestead, Florida;** )
                                            )

2

CAMPBELL URGENT CARE, a )
corporation in the State of Florida; )
ERNESTO RODRIGUEZ, Individually; )
                                              )

MONROE COUNTY, a Florida )
municipal corporation; )
                                              )

RICK RAMSAY, Individually, and in his )
capacity as Sheriff of the Monroe County )
Sheriff's Office, Monroe County, Florida; )
                                              )

CHAD SCIBILIA, Individually, and in )
his capacity as Internal Affairs Detective )
for the Monroe County Sheriff's Office, )
Monroe County, Florida; )
                                              )

LUIS GOMEZ, Individually, and in )
his capacity as Deputy for the Monroe )
County Sheriff's Office, Monroe County, )
Florida; )
                                              )

MIAMI-DADE COUNTY, a Florida )
municipal corporation; )
                                              )

J.D. PATTERSON, Individually, and in )
his capacity as Miami-Dade Police )
Department Director; )
                                              )

ARIEL ARTIME, Individually, and in )
his capacity as Major for the Miami-Dade )
Police Department, Miami-Dade, Florida; )
                                              )

ADRIENNE BYRD, Individually, and in )
her capacity as Major for the Miami-Dade )
Police Department, Miami-Dade, Florida; )
                                              )

ALEX DIAZ DE VILLEGAS, )
Individually, and in his capacity as )
Lieutenant for the Miami-Dade Police )
Department, Miami-Dade, Florida; )
                                              )

ELTON LEE, Individually, and in his )
capacity as Lieutenant for the )
Miami-Dade Police Department, )
Miami-Dade, Florida; )

3

**JOHN RYAN, Individually, and in his**          )
**capacity as Internal Affairs Detective for**   )
**the Miami-Dade Police Department,**            )
**Miami-Dade, Florida;**                         )
                                                 )
**JORGE CAMERON, Individually, and**             )
**in his capacity as Internal Affairs**          )
**Detective for the Miami-Dade Police**          )
**Department, Miami-Dade, Florida;**             )
                                                 )
**DARREL COOPER, Individually, and**             )
**in his capacity as Internal Affairs**          )
**Detective for the Miami-Dade Police**          )
**Department, Miami-Dade, Florida;**             )
                                                 )
**CARLOS ALVAREZ, Individually, and**            )
**in his capacity as Police Officer for the**    )
**Miami-Dade Police Department,**               )
**Miami-Dade, Florida;**                         )
                                                 )
**EDWARD WEBSTER, Individually,**                )
**and in his capacity as Police Officer for**    )
**the Miami-Dade Police Department,**            )
**Miami-Dade, Florida;**                         )
                                                 )
**D. RODRIGUEZ, Individually, and in**           )
**his capacity as Police Officer for the**       )
**Miami-Dade Police Department,**               )
**Miami-Dade, Florida;**                         )
                                                 )
**RONALD ZAPATAS, Individually, and**            )
**in his capacity as Police Officer for the**    )
**Miami-Dade Police Department,**               )
**Miami-Dade, Florida;**                         )
                                                 )
**JOHN DOE, Individually, and in his**           )
**capacity as Police Officer for the**           )
**Miami-Dade Police Department,**               )
**Miami-Dade, Florida;**                         )
                                                 )
**R. SUAREZ, Individually, and in his**          )
**capacity as Police Officer for the**           )
**Miami-Dade Police Department,**               )
**Miami-Dade, Florida;**                         )
                                                 )
      **Defendants.**                            )
_____

## COMPLAINT

COME NOW Plaintiffs, JAMES ERIC MCDONOUGH and VANESSA MCDONOUGH, by and through their undersigned counsel and files this Complaint and sues Defendants CITY OF HOMESTEAD, JEFF PORTER, GEROGE GRETSAS, ALEXANDER ROLLE, ANTONIO AQUINO, ALEJANDRO MURGUIDO, J. CRUZ, DAVID SNYDER, JOHN BUCHANAN, M. PASQUARELLA, L. ZAVALETA, THOMAS MEAD, MARIO ARZUAGA, VERONICA BLANCO, A. PEARCE, THOMAS SURMAN, CAMPBELL URGENT CARE, ERNESTO RODRIGUEZ, MONROE COUNTY, RICK RAMSAY, CHAD SCIBILIA, LUIS GOMEZ, MIAMI-DADE COUNTY, J.D. PATTERSON, ARIEL ARTIME, ADRIENNE BYRD, ALEX DIAZ DE VILLEGAS, ELTON LEE, JOHN RYAN, JORGE CAMERON, DARRELL COOPER, CARLOS ALVAREZ, EDWARD WEBSTER, D. RODRIGUEZ, RONALD ZAPATAS, JOHN DOE, and R. SUAREZ stemming from acts on October 29, 2012 and continuing through January 21, 2015 and would state as follows:

## JURISDICTION AND VENUE

1.  This is a civil action seeking money damages arising out of violations of Federal law and State law in excess of fifteen thousand dollars ($15,000.00), exclusive of costs, interest, and attorney's fees.

2.  This action is brought pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 18 U.S.C. § 1964, 18 U.S.C. § 2721, as well as the First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

3.  The United States District Court for the Southern District of Florida has jurisdiction over this action pursuant to:

    a.  28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States;

    b.  28 U.S.C. § 1343, which gives district courts original jurisdiction over actions to secure civil rights extended by the United States government;

    c.  28 U.S.C. § 1367(a), which gives district courts supplemental jurisdiction to hear pendant State tort claims arising under State law.

4.  Plaintiffs have complied with all conditions precedent to this action pursuant to the requirements of Fla. Stat. § 768.28, respective to all claims against the CITY OF HOMESTEAD, and MIAMI-DADE COUNTY.  MONROE COUNTY is not a party to any state tort, although its employees are.

5.  The incidents complained of in this action occurred in the County of Miami-Dade, State of Florida and County of Monroe, State of Florida, within the territorial jurisdiction of this Court.  Therefore, venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

6.  Plaintiff JAMES ERIC MCDONOUGH (hereinafter "Dr. McDonough" and/or "Plaintiff") is a natural person, who, at all times complained of in this action, is a resident of Miami-Dade County, State of Florida.

7.  Plaintiff VANESSA MCDONOUGH (hereinafter "V. McDonough" and/or "Plaintiff") is a natural person, who, at all times complained of in this action, is a resident of Miami-Dade County, State of Florida.

8.  Defendant CITY OF HOMESTEAD (hereinafter "CITY"), is a Florida municipal corporation, organized and existing under the laws of the State of Florida.

9. Defendant, MIAMI-DADE COUNTY (hereinafter "MIAMI-DADE"), is a Florida municipal corporation, organized and existing under the laws of the State of Florida.

10. Defendant, MONROE COUNTY (hereinafter "MONROE"), is a Florida municipal corporation, organized and existing under the laws of the State of Florida.

11. Defendant, CAMPBELL URGENT CARE (hereinafter "CAMPBELL"), is a corporation in the State of Florida, organized and existing under the laws of the State of Florida.

12. Defendant JEFF PORTER (hereinafter, "PORTER" and/or "Mayor PORTER"), is, and at all times complained of herein, was Mayor for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

13. Defendant GEORGE GRETSAS (hereinafter, "GRETSAS" or "Manager GRETSAS"), is, and at all times complained of herein, was City Manager for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

14. Defendant ALEXANDER ROLLE (hereinafter, "ROLLE" or "Chief ROLLE"), is, and at all times complained of herein, was Chief of Police for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

15. Defendant J.D. PATTERSON (hereinafter, "PATTERSON" or "Director PATTERSON"), is, and at all times complained of herein, was Police Director for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

16. Defendant RICK RAMSAY (hereinafter, "RAMSAY" or "Sheriff RAMSAY"), is, and at all times complained of herein, was Sheriff for Defendant MONROE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MONROE.

17. Defendant ALEJANDRO MURGUIDO (hereinafter, "MURGUIDO"), is, and at all times complained of herein, was a Police Officer for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

18. Defendant ANTONIO AQUINO (hereinafter, "AQUINO"), is, and at all times complained of herein, was an Internal Affairs Detective for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

19. Defendant J. CRUZ (hereinafter, "CRUZ"), is, and at all times complained of herein, was a Police Officer for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

20. Defendant DAVID SNYDER (hereinafter "SNYDER"), is, and at all times complained of herein, was a Police Officer and Supervisor for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant CITY.

21. Defendant JOHN BUCHANAN (hereinafter, "BUCHANAN"), is, and at all times complained of herein, was a Police Officer for Defendant CITY, acting as an individual person

under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

22. Defendant M. PASQUARELLA (hereinafter, "PASQUARELLA"), is, and at all times complained of herein, was a Police Officer for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

23. Defendant A. PEARCE (hereinafter, "PEARCE"), is, and at all times complained of herein, was a Police Officer for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

24. Defendant L. ZAVALETA (hereinafter, "ZAVALETA"), is, and at all times complained of herein, was a Police Officer for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

25. Defendant THOMAS MEAD (hereinafter, "MEAD"), is, and at all times complained of herein, was a Police Officer for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

26. Defendant MARIO ARZUAGA (hereinafter, "ARZUAGA"), is, and at all times complained of herein, was a Police Officer for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

9

27. Defendant VERONICA BLANCO (hereinafter, "BLANCO"), is, and at all times complained of herein, was a Police Officer for Defendant CITY, acting as an individual person under the color of state law, in her individual capacity and was acting in the course of and within the scope of her employment with defendant CITY.

28. Defendant THOMAS SURMAN (hereinafter, "SURMAN"), is, and at all times complained of herein, was a Police Officer and Sergeant for Defendant CITY, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant CITY.

29. Defendant JORGE CAMERON (hereinafter, "CAMERON"), is, and at all times complained of herein, was an Internal Affairs Detective for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

30. Defendant ALEX DIAZ DE VILLEGAS (hereinafter, "DIAZ DE VILLEGAS"), is, and at all times complained of herein, was a Police Lieutenant for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

31. Defendant JOHN RYAN (hereinafter, "RYAN"), is, and at all times complained of herein, was a Internal Affairs Detective for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

32. Defendant ELTON LEE (hereinafter, "LEE"), is, and at all times complained of herein, was a Police Lieutenant for Defendant MIAMI-DADE, acting as an individual person under the

color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

33. Defendant CARLOS ALVAREZ (hereinafter, "ALVAREZ"), is, and at all times complained of herein, was a Police Detective for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

34. Defendant R. SUAREZ (hereinafter, "SUAREZ"), is, and at all times complained of herein, was a Police Officer for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

35. Defendant D. RODRIGUEZ (hereinafter, "D. RODRIGUEZ"), is, and at all times complained of herein, was a Police Officer for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

36. Defendant DARREL COOPER (hereinafter, "COOPER"), is, and at all times complained of herein, was a Internal Affairs Detective for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

37. Defendant RONALD ZAPASTAS (hereinafter, "ZAPASTAS"), is, and at all times complained of herein, was a Police Officer for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

38. Defendant ARIEL ARTIME (hereinafter, "ARTIME" or "Major ARTIME"), is, and at all times complained of herein, was a Police Major for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

39. Defendant ADRIENNE BYRD (hereinafter, "BYRD" or "Major BYRD"), is, and at all times complained of herein, was a Police Major for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in her individual capacity and was acting in the course of and within the scope of her employment with defendant MIAMI-DADE.

40. Defendant EDWARD WEBSTER (hereinafter, "WEBSTER"), is, and at all times complained of herein, was a Police Officer for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

41. Defendant JOHN DOE (hereinafter, "DOE"), is, and at all times complained of herein, was a Police Officer for Defendant MIAMI-DADE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MIAMI-DADE.

42. Defendant LUIS GOMEZ (hereinafter, "GOMEZ"), is, and at all times complained of herein, was a Deputy Sheriff for Defendant MONROE, acting as an individual person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MONROE.

43. Defendant CHAD SCIBILIA (hereinafter, "SCIBILIA"), is, and at all times complained of herein, was a Internal Affairs Detective for Defendant MONROE, acting as an individual

person under the color of state law, in his individual capacity and was acting in the course of and within the scope of his employment with defendant MONROE.

44. Defendant ERNESTO RODRIGUEZ (hereinafter, "E. RODRIGUEZ"), is, and at all times complained of herein, was physician for Defendant CAMPBELL, acting as an individual under the direction and control of Defendant CAMPBELL, and was acting in such capacity as an agent, servant, employee of Defendant CAMPBELL.

## FACTUAL ALLEGATIONS

45. These allegations began when Plaintiff, Dr. McDonough, asked his neighbor MURGUIDO, a City of Homestead police officer, to drive respectfully and obey the law on the road they both live on.  Dr. McDonough was then immediately retaliated against, and suffered a myriad of civil rights abuses over the course of several years. These incidents originated and spiraled out of control because a police officer was offended that a citizen would dare to ask him to obey the law.  That officer and his colleagues and superiors subsequently refused to accept responsibility for their actions.

46. Dr. McDonough, as a result of the event(s) complained herein, exercised his First Amendment rights, by regularly speaking out and writing regarding the abuses he and his family were subjected to and witnessed.  This led to further retaliation against Dr. McDonough, as well as retaliation against Plaintiff Vanessa McDonough, Dr. McDonough's wife.

47. Dr. McDonough wrote about the abuses of the CITY, MIAMI-DADE, and MONROE officers on the police blog www.leoaffairs.com, a public law enforcement blog.  Suspected CITY, MIAMI-DADE, and MONROE officers, retaliated against Dr. McDonough and his wife in response to Dr. McDonough's exercise of his rights, making statements such as ". . . it is considered a search because we went so deep and a seizure since she is slammed over and over.

You should hear her scream! However, we are covered since she gave us consent for the duration of the search and seizure. Yes, we have it on video." They also falsely suggested Dr. McDonough was just paranoid because of his schizophrenia and they were "just stopping by to get a blow job from [his] wife." They even were so bold to claim Dr. McDonough's children are not his own, due to his wife's alleged sexual promiscuity.

48. Well over one hundred threatening and defamatory comments have been and continue to be made in retaliation against Dr. McDonough as a victim and witness. The officers published online Dr. McDonough's address, cell phone number, his place of employment, his title and salary, and his wife's employer information attempting to intimidate and silence them.

49. The officers encouraged other officers to file complaints against Dr. McDonough with his federal employer because he allegedly disrespected the police officers who violated his rights in his writings.

50. The officers made false statements about V. McDonough, attempting to damage her professional career, even though she was just as an innocent bystander. The officers justified their retaliation against McDonough's family in one instance by plainly stating that because Dr. McDonough tried to file a complaint against one of "them," which affects the jobs they use to feed their families, "it seems fit to get all the family members involved in this fight." This statement directly referred to involving Dr. McDonough's family.

51. The events complained of herein took place over an extended period of time, starting approximately in October 2012 and continuing to the present day, showing a systematic and continued pattern and culture of abuse, as well as collusion to commit such abuse.

52. The CITY, MIAMI-DADE, and MONROE, through their employees and law enforcement agencies have retaliated against the Plaintiffs as a result of Dr. McDonough's exercise of his First Amendment speech, press and petition rights.

53. Dr. McDonough, attempted to exhaust all resources and avenues seeking redress. However, Plaintiff's complaints were blocked, unanswered, denied and/or retaliated against.

54. Moreover, at all times complained of herein, Defendants PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, CRUZ, SNYDER, BUCHANAN, PASQUARELLA, ZAVALETA, MEAD, ARZUAGA, BLANCO, PEARCE, SURMAN, RAMSEY, SCIBILIA, GOMEZ, PATTERSON, ARTIME, BYRD, VILLEGAS, LEE, RYAN, CAMERON, ALVAREZ, WEBSTER, D. RODRIGUEZ, ZAPATAS, DOE, COOPER and SUAREZ were acting pursuant to, or otherwise contributing to the creation and maintenance of the customs, policies, usages, and practices of the City of Homestead "CITY," Miami-Dade County "MIAMI-DADE," and Monroe County "MONROE" for, inter alia: 1) using excessive/unreasonable force on persons; 2) unlawfully seizing (detaining and arresting) persons; 3) unlawfully searching persons; 4) fabricating/destroying/concealing/altering evidence in criminal and civil actions; 5) otherwise framing persons in criminal actions and civil injunctions, in order to falsely, maliciously, and oppressively convict innocent persons and their families to protect themselves and other CITY, MIAMI-DADE, and/or MONROE officials, employees, and supervisory personnel from civil, administrative, and/or criminal liability; 6) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech, press, and petition; and 7) for covering up unlawful and tortious conduct by Defendant CITY police and personnel, Defendant MIAMI-DADE police and personnel, and Defendant MONROE, Sheriff, Deputy Sheriffs, and personnel, and were a proximate cause of

federal and state constitutional violations and tortious actions complained of below by the Plaintiffs in this action.

55. In addition, Defendants CITY, MIAMI-DADE, and MONROE had notice of other false reports, complaints and use of unreasonable force by said individual defendants to this action and failed to take any corrective/disciplinary actions against any of the said defendants. The Defendants CITY, MIAMI-DADE, and MONROE through their agents and employees, repeatedly blocked Dr. McDonough from filing formal complaints thereby establishing a custom or practice of violating civil rights, and further ratifying the unlawful behavior of their employees. In addition, all of the above-named defendants to this action acted pursuant to an agreement and understanding, and a common plan and scheme to deprive the Plaintiffs their federal constitutional and statutory rights, as well as Florida constitutional, common law and statutory state law rights, as described above and below.  The above-named defendants acted in joint and concerted action to deprive the Plaintiffs of those rights as set forth below, all in violation of 42 U.S.C. § 1983 and otherwise in violation of Florida state law.

56. Said conspiracy/agreement/understanding/plan/scheme/joint action/concerted action was a legal cause of the violation of the Plaintiffs' federal and state constitutional and statutory rights, as set forth below.

**CAUSES OF ACTION RELATING TO OCTOBER 29, 2012 INCIDENT**
**FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Fourth Amendment Right – Unreasonable Seizure of Person**
**(Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS)**

57. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, above, as though set forth in full herein.

58. Plaintiffs and Defendant MURGUIDO live on the same street in south Miami-Dade County and in the same neighborhood. The neighborhood is situated outside of Homestead city limits, in the jurisdiction of unincorporated Miami-Dade County.

59. On October 24, 2012 at 5:30 pm, Dr. McDonough witnessed Defendant MURGUIDO speeding and driving recklessly through the neighborhood, running both Dr. McDonough and another driver off the road in his police cruiser. MURGUIDO was neither operating lights nor sirens, nor was he responding to any call or emergency.

60. On October 29, 2012, Dr. McDonough saw defendant MURGUIDO in his front yard speaking to his lawn man.  Dr. McDonough motioned for his attention.  When MURGUIDO finished speaking with his lawn man, he approached Dr. McDonough, who was standing in the street. Dr. McDonough then spoke with MURGUIDO about his reckless driving and requested he mind the law while driving in the neighborhood or he would be forced to file a formal complaint.

61. The conversation lasted a little less than a minute and ended when Dr. McDonough peacefully turned and began walking toward his residence.

62. Dr. McDonough had traveled approximately 700 feet before MURGUIDO got into his police cruiser and chased Dr. McDonough down. MURGUIDO raced his cruiser towards Dr. McDonough, slammed on brakes right behind Dr. McDonough, and demanded that Dr. McDonough stop or he would be arrested. Further, MURGUIDO stated that Dr. McDonough "better not mess with cops."

63. Defendant GOMEZ, a Monroe County Sheriff's Deputy, who lives across the street from MURGUIDO, witnessed the conversation between Dr. McDonough and MURGUIDO.

17

64.  GOMEZ also got into his police cruiser and in concert with MURGUIDO chased down and unlawfully detained Dr. McDonough.  GOMEZ directly instructed Dr. McDonough to stay put while waiting for other officers to arrive.

65. Defendant BUCHANAN is an officer with Homestead Police Department and was the third officer on the scene. At the time BUCHANAN arrived, MURGUIDO and GOMEZ were unlawfully detaining Dr. McDonough.   BUCHANAN participated by yelling at Dr. McDonough from across the street, claiming Dr. McDonough needed to "mind his own business."

66. BUCHANAN deliberately acted in a way to provoke an argument so that Dr. McDonough would open himself up to abuse and brutality by the MURGUIDO and GOMEZ.

67. Even though the entirety of the incident took place outside of Defendant CITY's limits and jurisdiction, Homestead Police officers SNYDER, PASQUARELLA, ZAVALETA, PEARCE, and CRUZ arrived on scene to detain and interrogate Dr. McDonough.

68. Dr. McDonough was interrogated by three different individual Homestead Police officers, each asking identical questions. After each interrogation, the officers would converse as a group, including Defendant MURGUIDO. These officers claimed that Dr. McDonough's actions approaching MURGUIDO could be construed as a threat.  However, this is not a credible threat under Florida law and does not rise to the level of reasonable suspicion or probable cause of a crime to allow for the lawful detention of Dr. McDonough.

69. Even though Dr. McDonough had not committed a crime, nor was there reasonable suspicion or probable cause to believe that he had committed a crime, Dr. McDonough was detained for approximately 30 minutes before the arrival of defendant DIAZ DE VILLEGAS.

70. MIAMI-DADE Supervisor DIAZ DE VILLEGAS arrived approximately 30 minutes after the detention began.

71. Defendant DIAZ DE VILLEGAS detained Dr. McDonough and retained his property (i.e. his license and pocket knife) without reasonable suspicion or probable cause of a crime for approximately one hour, including at least an additional 30 minutes, after explicitly advising Dr. McDonough that he had committed no crime.

72. The detention of Dr. McDonough occurred outside CITY's jurisdiction and lasted for over 90 minutes. During the detainment, an excessive total of twelve officers responded, including law enforcement officers from CITY, MIAMI-DADE, and MONROE. Even assuming for arguendo there was reasonable suspicion for the initial detention, the detention was unreasonably extended beyond any legitimate law enforcement purpose and was solely to harass Dr. McDonough for speaking out.

73. Defendant MURGUIDO falsely and maliciously accused Dr. McDonough of approaching him regarding a speeding ticket he had written Dr. McDonough's wife a year earlier.  Dr. McDonough had only approached MURGUIDO because of his dangerous driving and approached MURGUIDO after remembering a conversation in 2009, wherein MURGUIDO asked Dr. McDonough to come to him as a neighbor with any issues in lieu of filing a complaint with his department. Also, it is noted that neither MURGUIDO nor GOMEZ mentioned, at this point, that Dr. McDonough had trespassed.  If Dr. McDonough had trespassed, he would have been arrested at that time for trespassing.

74. Throughout the detention, due to the unreasonably excessive reaction of law enforcement, Dr. McDonough was afraid to move or speak, fearing that any action, regardless

how benign, would be used as a pretext to physically assault, murder and/or file criminal charges against him.

75. Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, SYNDER, BUCHANAN, CRUZ, PEARCE, PASQUARELLA, and ZAVALETA acted knowingly and deliberately in concert to deprive Plaintiff Dr. McDonough of Constitutional rights complained of herein.

76. Plaintiff Dr. McDonough's detainment was not because he had committed a crime, nor was it because he was suspected of committing a crime, but rather was in retaliation for the confrontation regarding MURGUIDO's dangerous driving habits in the community.

77. CITY, MIAMI-DADE, and MONROE police officers/deputies know that they have the backing of their fellow officers and the department.

78. Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, SYNDER, BUCHANAN, CRUZ, PEARCE, PASQUARELLA, and ZAVALETA knew that they had carte blanche to falsely accuse, detain, search, and arrest individuals in violation of their constitutional and civil rights without need for fear of repercussions.

79. Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS acted in concert to deprive Dr. McDonough of his Fourth Amendment right to be free from unreasonable seizure of his person.

80. The conduct of defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS was objectively unreasonable, without lawful authority, and a violation of Dr. McDonough's clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 to be free from unreasonable seizure of his person.

## SECOND CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### Violation of Fourth Amendment Right – Unreasonable Warrantless Search
### (Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS)

81. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 80, inclusive, above, as though set forth in full herein.

82. When Defendant DIAZ DE VILLEGAS arrived on scene, Dr. McDonough had already been passively detained for approximately 30 minutes. DIAZ DE VILLEGAS demanded Dr. McDonough's driver's license, which was produced. DIAZ DE VILLEGAS then immediately reached and aggressively snatched a common pocket knife which was clipped to Dr. McDonough's front pocket.

83. Despite admitting Dr. McDonough had committed no crime, and despite knowing that McDonough had already been on scene with the officers for over 30 min, DIAZ DE VILLEGAS did a "Terry" frisk for weapons. Dr. McDonough did not consent to the search, but due to fear of police abuse, he acquiesced by placing his hands behind his head, while lacing his fingers.

84. DIAZ DE VILLEGAS manipulated the contents of Dr. McDonough's pocket beyond a mere pat down, and then asked Dr. McDonough what was in his pockets.  DIAZ DE VILLEGAS immediately, and without waiting for a response, entered Dr. McDonough's pockets and removed his belongings which included a pack of cigarettes, a cell phone, and seven dollars ($7).

85. DIAZ DE VILLEGAS could not articulate probable cause to believe Dr. McDonough was in possession of a weapon or contraband.  As Dr. McDonough was passive and cooperative

and had already been detained with many other officers for over 30 minutes prior to DIAZ DE

VILLEGAS' arrival, it is clear officer safety was not a reasonable concern.

86. Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN,

SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS

acted in concert to deprive Dr. McDonough of his Fourth Amendment right to be free from

unreasonable warrantless search of his person.

87. The conduct of Defendants MIAMI-DADE and DIAZ DE VILLEGAS was objectively

unreasonable and a violation of Dr. McDonough's clearly established rights under the Fourth

and Fourteenth Amendments and 42 U.S.C. § 1983 to be free from warrantless search of his

person.

### THIRD CAUSE OF ACTION
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of First Amendment Right – Right to Travel Freely**
**Violation of Fifth Amendment Right – Due Process**
**Violation of Eighth Amendment Right – Cruel and Unusual Punishment**
**(Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MONROE,**
**MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA,**
**ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS)**

88. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in

paragraphs 45 through 87, inclusive, above, as though set forth in full herein.

89. After admitting that Dr. McDonough had committed no crime, DIAZ DE VILLEGAS

ordered Dr. McDonough to not travel west upon SW 324 ST beyond the stop sign at SW 202

AVE in the future or he would be arrested for criminal trespass.

90. Despite having committed no crime, DIAZ DE VILLEGAS summarily and without due

process found Dr. McDonough guilty and imposed a cruel, unusual, and unlawful order

amounting to summary judgment with criminal consequences.

91. Since October 29, 2012, Dr. McDonough's personal liberty has been infringed upon, as he has not been able to exercise his First Amendment right to freely move throughout his own neighborhood for fear of being criminally trespassed and arrested. This included not being able to walk his children for most of the Halloween trick-or-treating activities two days later. It also prevented him from taking his regular walks around the community due to fear of retaliatory prosecution.

92. Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS acted in concert to deprive Dr. McDonough of his Fifth Amendment due process rights.

93. The conduct of Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS was objectively unreasonable and in violation of Dr. McDonough's clearly established Due Process rights under the First, Fifth, Eighth and Fourteenth Amendments and 42 U.S.C. § 1983.

### FOURTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### Violation of First Amendment Right – Free Speech, Petition for Redress
### Violation of Fifth Amendment Right – Due Process
### (Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS)

94. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 93, inclusive, above, as though set forth in full herein.

95. Plaintiff Dr. McDonough engaged in First Amendment protected free speech when he approached MURGUIDO regarding his reckless driving habits.

96. At the time MURGUIDO was driving recklessly in his government issued patrol car and acting in his official capacity. Dr. McDonough addressed MURGUIDO in his official capacity as a police officer, though they are neighbors. Dr. McDonough indicated that if the lawless behavior did not stop, he would be forced to report it to the CITY. This is the highest form of protected speech.

97. Immediately after Dr. McDonough exercised his highly protected First Amendment rights, MURGUIDO got into his official patrol car and chased down Dr. McDonough. This chase and resulting detention, search, and deprivation of rights was in direct retaliation for Dr. McDonough exercising his guaranteed right to free speech.

98. After Dr. McDonough, had been detained for an unreasonable amount of time, conducted an unreasonable and warrantless search, and deprived of his due process rights, Defendant DIAZ DE VILLEGAS warned Dr. McDonough that if he filed any complaints it "would not be good for [him]."  DIAZ DE VILLEGAS also repeatedly instructed Dr. McDonough that he had better "quash" this, giving the clear understanding of a definite intention of retaliation if Dr. McDonough pursued a complaint.

99. Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, SYNDER, BUCHANAN, CRUZ, PEARCE, PASQUARELLA, and ZAVALETA acting under the color of law, retaliated against Dr. McDonough for exercising his First Amendment rights to free speech, and chilled his future exercise of speech and petition rights. Further, defendants from CITY, MIAMI-DADE and MONROE later made good on this promise when Dr. McDonough attempted to file a complaint(s).

100.     Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, SYNDER, BUCHANAN, CRUZ, PEARCE, PASQUARELLA, and ZAVALETA used their power and

positions as law enforcement officers to intimidate and adversely affect Plaintiff Dr. McDonough for speaking out and to keep him from further speaking out, creating an unlawful prior restraint.

101.    Had Dr. McDonough not approached MURGUIDO on October 29, 2012 regarding his reckless driving habits, he would not have been unlawfully detained and searched. Further, had Dr. McDonough not attempted to file complaints regarding this behavior, he would not have been continually retaliated against. In retaliation for exercising his free speech rights, Dr. McDonough has endured countless civil and constitutional right violations.

102.    Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS acted in concert to deprive Dr. McDonough of his First Amendment speech and redress rights.

103.    The conduct of Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS was objectively unreasonable and a violation of Dr. McDonough's clearly established Due Process rights under the First, Fifth and Fourteenth Amendments and 42 U.S.C. § 1983.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1985**
**Conspiracy to Interfere with Civil Rights**
**(Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MONROE,**
**MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA,**
**ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS)**

104.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 103, inclusive, above, as though set forth in full herein.

105.     Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, and CRUZ all knew or should have known that they had no lawful authority to detain, search, and deprive Dr. McDonough of his due process rights.

106.     Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, and CRUZ cooperated willfully and purposefully, acting in concert and agreement to deny Dr. McDonough his constitutionally protected civil rights.

107.     Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, and CRUZ acted to deny Dr. McDonough his rights through a "class-based" discriminatory animus.

108.     In retaliation for Dr. McDonough exercising his First Amendment rights, Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, and CRUZ created a different second class of citizen and acted adversely to that class of citizens denying them their rights.

109.     Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, and CRUZ and their "don't mess with cops" attitude, as stated earlier has created an environment where one class of citizens, law enforcement, and their friends and family are entitled to enjoy their rights as well as special privileges above the law, whereas a second class of citizens unconnected to the officers, or even worse, a third class of citizen dissenters are not.

110.     Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, and CRUZ have furthered their

conspiracy to deny rights to citizens they consider third-class when they unlawfully detained, searched, and summarily created a law that would keep Dr. McDonough from enjoying his liberty under due process, simply because he exercised his First Amendment rights of free speech and redress.

111.     The conduct of Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS was objectively unreasonable and in violation of Dr. McDonough's clearly established constitutional and civil rights and in violation of 42 U.S.C. § 1985.

**SIXTH CAUSE OF ACTION**
**FALSE IMPRISONMENT**
**(Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS)**

112.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 58, inclusive, above, as though set forth in full herein.

113.     Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, SYNDER, BUCHANAN, CRUZ, PEARCE, PASQUARELLA, and ZAVALETA used threat of force and/or arrest to unlawfully detain Dr. McDonough.  Dr. McDonough, in fear for his life and safety, complied with all unlawful police orders, including staying confined to a fixed area for an unreasonable amount of time.

114.     Defendants MURGUIDO, GOMEZ, DIAZ DE VILLEGAS, SYNDER, BUCHANAN, CRUZ, PEARCE, PASQUARELLA, and ZAVALETA had no probable cause or reasonable suspicion to detain Dr. McDonough.

115.     Defendants   MURGUIDO,   GOMEZ,   BUCHANAN,   SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS acting in the

27

course and scope of their employment as police officers, unlawfully detained Plaintiff Dr. McDonough.

116.     The conduct of Defendants CITY, MIAMI-DADE, MURGUIDO, GOMEZ, BUCHANAN, SNYDER, PASQUARELLA, ZAVALETA, PEARCE, CRUZ, and DIAZ DE VILLEGAS was objectively unreasonable and constitutes false imprisonment under Florida Law.

**CAUSES OF ACTION RELATING TO NOVEMBER 1, 2012 INCIDENT**
**SEVENTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Fourth Amendment Right – Unreasonable Seizure of Person**
**Violation of Fifth Amendment Right against Self Incrimination**
**Violation of Fifth Amendment – Right to Due Process**
**Violation of Sixth Amendment – Right to Counsel**
**Violation of Eighth Amendment – Cruel and Unusual Punishment**
**Violation of H.I.P.A.A. Confidentiality and Privacy Rights.**
**(Plaintiff Dr. McDonough, as to Defendants CITY, BLANCO,**
**ARZUAGA, CAMPBELL, and E. RODRIGUEZ)**

117.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

118.     As a result of the October 29, 2012 encounter, Dr. McDonough suffered from severe emotional distress. Dr. McDonough was in constant fear of false arrest and/or retaliatory physical abuse.  Dr. McDonough was unable to eat or sleep for four days.

119.     Dr. McDonough began experiencing acute anxiety induced tachycardia, high blood pressure, and a severe anxiety attack. No other anxiety attacks have been suffered by Dr. McDonough before or after this event.

120.     On November 1, 2012, Dr. McDonough fearing for his health drove himself to CAMPBELL, where he was treated by Defendant E. RODRIGUEZ.

121.      Dr. McDonough informed Defendant E. RODRIGUEZ that the cause of his anxiety was the police encounter and detention the he experienced on October 29, 2012 and the fear of retaliation by CITY officers.

122.      Defendant E. RODRIGUEZ, under the guise of calling an ambulance to transport Dr. McDonough to a hospital, called Homestead Police Department and falsely claimed Dr. McDonough was "psychotic" and a "schizophrenic" who was having delusions and hallucinations and needed to be "Baker Acted."

123.      Defendant E. RODRIGUEZ later admitted that the medical report he prepared was false in many ways and made a second record of the same incident correcting most of the falsehoods.   However, both medical and police reports state that Dr. McDonough was cooperative and not a threat of harm to self or others.  No legal authority existed to curtail Dr. McDonough's rights.

124.      While waiting for the arrival of the ambulance, Dr. McDonough walked out in front of CAMPBELL to smoke a cigarette.  As Dr. McDonough was walking out, he saw E. RODRIGUEZ talking with CITY officers BLANCO and ARZUAGA.  E. RODRIGUEZ informed the officers of Dr. McDonough's medical condition without permission or legal necessity. This information was later used as the foundation for countless rumors, defamation and retaliation against Dr. McDonough and his family.

125.      When Defendant BLANCO saw Dr. McDonough standing in front of the urgent care facility, she demanded Dr. McDonough sit on the curb. Dr. McDonough, who was already traumatized, complied.

126.      Defendant BLANCO began to interrogate Dr. McDonough, and demanded that he tell her everything that happened during the October 29, 2012 incident, even though there

was no medical or legal necessity for such information.  Dr. McDonough explicitly invoked his

Fifth Amendment right to not speak.  BLANCO then threatened that if Dr. McDonough did not

tell her everything that happened, she would have him involuntarily committed against his will.

127.     Dr. McDonough then explicitly asserted his Sixth Amendment right to have his

attorney present.  Again, Defendant BLANCO ignored this request and continued to question

Dr. McDonough for over two hours under threat of involuntarily commitment regarding the

October 29, 2012 incident.

128.     After having his requests to leave denied, Dr. McDonough asked Defendant

BLANCO what probable cause or reasonable suspicion she had to detain him. BLANCO was

unable to articulate any reason. Instead, Defendant BLANCO responded that she "did not want

to get into a statute pissing contest" with her.

129.     Defendants BLANCO, ARZUAGA, and E. RODRIGUEZ detained Dr.

McDonough for over two and one-half hours. BLANCO, in complete disregard for Dr.

McDonough's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights and medical

condition, questioned, interrogated, badgered, harassed, and purposefully attempted to further

agitate him, while Defendants ARZUAGA and E. RODRIGUEZ complacently watched.

130.     After detaining Dr. McDonough for over for over two and one-half hours, the

officers called his wife who came and picked him up. Dr. McDonough left CAMPBELL

without ever receiving medical attention.

131.     Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ,

detained Dr. McDonough without probable cause or reasonable suspicion for over two and one-

half hours in violation of his Fourth Amendment rights, as well as Fifth and Fourteenth

Amendment rights of due process.

132.     Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ, continued questioning and interrogating Dr. McDonough even after he asserted his Fourth Amendment right against unreasonable seizure, his Fifth Amendment right to silence, and his Sixth Amendment right to counsel.  This was done even though there was neither reasonable suspicion nor probable cause of criminal activity, nor evidence that Dr. McDonough was non-cooperative and a threat of harm to self or others.  All police and medical reports document this fact.

133.     Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ, were all well aware that Dr. McDonough was suffering from a medical crisis and had voluntarily gone to CAMPBELL seeking medical attention. Despite this knowledge, they continued to harass and interrogate Dr. McDonough or allowed such to happen, all while having power to stop it.  They did this in the hope that Dr. McDonough would react in a way that would allow them to physically abuse, arrest and/or commit him. Defendant BLANCO, acting under the color of law, forced Dr. McDonough to answer questions about the CITY under threat of involuntary commitment to a mental hospital. This behavior on the part of CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ amounted to cruel and unusual punishment in violation of the Eighth Amendment.

134.     Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ acted in concert to deprive Dr. McDonough of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights, as well as H.I.P.A.A. patient privacy rights.

135.     The conduct of Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ was objectively unreasonable and a violation of Dr. McDonough's clearly

established Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights, H.I.P.A.A., and 42 U.S.C. § 1983.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1985**
**Conspiracy to Interfere with Civil Rights**
**(Plaintiff Dr. McDonough, as to Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ)**

136.      Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56 and 117 through 135, inclusive, above, as though set forth in full herein.

137.      Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ all knew or should have known that they had no lawful authority to detain Dr. McDonough, deprive him of his constitutional rights, or involuntarily commit him.

138.      Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ cooperated willfully and purposefully, and acted in concert and agreement to deny Dr. McDonough his constitutionally protected civil rights.

139.      Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ acted to deny Dr. McDonough his rights through a "class-based" discriminatory animus.

140.      In retaliation for Dr. McDonough's earlier encounter with CITY police officers, Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ created a different second class of citizen and acted adversely to that class of citizens denying them their rights.

141.      Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ and their "don't mess with cops" attitude, as stated earlier, has created an environment where one class of citizens, law enforcement, their friends and family are entitled to enjoy their rights

32

as well as special above the law privileges, whereas a second class of citizens who are unconnected, or even worse a third class of citizen dissenters are not.

142.     Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ furthered their conspiracy to deny rights to citizens they consider third-class when they unlawfully detained Dr. McDonough for over two and one-half hours, violating multiple constitutional and civil rights.

143.     The conduct of defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ was objectively unreasonable and a violation of Dr. McDonough's clearly established constitutional and civil rights and in violation of 42 U.S.C. § 1985.

**NINTH CAUSE OF ACTION**
**FALSE IMPRISONMENT**
**(Plaintiff Dr. McDonough, as to Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ)**

144.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56 and 117 through 135, inclusive, above, as though set forth in full herein.

145.     Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ used threat of force and/or involuntary committal to unlawfully detain Dr. McDonough. Dr. McDonough, in fear for his life and safety complied with all unlawful police orders, including staying confined to a fixed area for an unreasonable amount of time.

146.     The Defendants had no probable cause or reasonable suspicion to detain Dr. McDonough.

147.     Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ, acting in the course and scope of their employment as police officers, and medical professionals unlawfully detained Plaintiff Dr. McDonough.

148.     The conduct of Defendants CITY, BLANCO, ARZUAGA, CAMPBELL, and E. RODRIGUEZ was objectively unreasonable and constitutes false imprisonment under Florida Law.

**CAUSES OF ACTION RELATING TO 2013 MIAMI-DADE CAC MEETINGS**
**TENTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of First Amendment Right – Free Speech, Petition for Redress**
**Violation of Fourth Amendment Right – Unreasonable Seizure of Person and Property**
**(Plaintiff Dr. McDonough, as to Defendants MIAMI-DADE, ARTIME, RYAN, and DOE)**

149.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

150.     On February 12, 2013, Plaintiff Dr. McDonough, at the advice and invitation of a friend, attended a Citizens Advisory Committee ("CAC") meeting and spoke out about the abuses he had suffered at the hands of MIAMI-DADE and CITY law enforcement officers.

151.     At the CAC meeting, Dr. McDonough informed MIAMI-DADE South District Major ARTIME that his civil rights had been violated in multiple ways and that felony violations under both state and federal law had occurred due to the actions of MIAMI-DADE and CITY officers.  Dr. McDonough advised ARTIME he wanted to file an Internal Affairs (IA) complaint, but his calls to both the CITY's and MIAMI-DADE's respective IA departments were not being returned.

152.     Defendant ARTIME offered to personally call MIAMI-DADE IA together with Dr. McDonough, and requested Dr. McDonough wait for a few minutes for the meeting to be over.  Dr. McDonough agreed. VILLEGAS, an officer Dr. McDonough wanted to complain about, was present to audio record the CAC meetings for official purposes as he regularly did. Subsequent records requests for the audio recordings of two years of meetings produced recordings before and after this meeting. Said meeting attended by Dr. McDonough was

officially recorded by VILLEGAS. However, this meeting's audio was not produced via FOIA request, even though Dr. McDonough watched VILLEGAS record the meeting.  Further, VILLEGAS routinely used the recordings to help produce the minutes of the meetings.  It is a violation of Fla. Stat. § 119 to destroy or conceal such public records. Additionally, the public records had not reached their minimum retention date and a destruction log was not kept as required under Fla. Stat. § 119.

153.    Defendant ARTIME, immediately after making the offer to Dr. McDonough, motioned for officers RYAN and DOE. ARTIME spoke with officers RYAN and DOE, who rushed over to Dr. McDonough and removed him from the public meeting.

154.    Dr. McDonough was then, without probable cause or reasonable suspicion, detained for 20 to 30 minutes while defendants RYAN and DOE questioned, interrogated, and intimidated Dr. McDonough. Dr. McDonough had his common pocket knife taken from his person and held.

155.    Defendants RYAN and DOE, claiming to be IA officers or former IA officers, attempted to intimidate Dr. McDonough from filing a complaint, suggesting that he would be retaliated against and his complaint would go nowhere.

156.    Defendant RYAN interrogated Dr. McDonough about the October 29, 2012 incident. Dr. McDonough, wanting to file a formal complaint complied with the questioning. RYAN stated that in his opinion, no constitutional violations occurred, and further stated that Dr. McDonough was lucky that it wasn't him (RYAN), because he would have done more. RYAN also claimed that a pack of cigarettes gives "reasonable suspicion" to search the personal belongings of a detainee, because there are "guns that can fit inside a pack of cigarettes".

157.     After being detained for 20 to 30 minutes Dr. McDonough was allowed to leave without being able to file a formal complaint.  RYAN never called IA with Dr. McDonough. State law and local policy create a procedure to file a complaint, which was withheld from Dr. McDonough denying him due process.

158.     Dr. McDonough attempted to contact ARTIME the very next day about this incident at the meeting and his desire to file of a formal complaint. Defendant ARTIME avoided all of Dr. McDonough's calls. Dr. McDonough was not allowed to file a complaint regarding the October 29, 2012 incident or the February 12, 2013 meeting.

159.     Defendants MIAMI-DADE, ARTIME, RYAN, and DOE acted together in retaliation of Dr. McDonough exercising his First Amendment rights to free speech and redress of grievances.

160.     Defendants MIAMI-DADE, ARTIME, RYAN, and DOE acted specifically to block and stop Dr. McDonough from exercising his fundamental constitutional right to petition the government for redress of grievances—especially abuses of power and civil rights.

161.     Defendants MIAMI-DADE, ARTIME, RYAN, and DOE, without a warrant, probable cause, or reasonable suspicion, unlawfully detained Dr. McDonough and temporarily confiscated his property in violation of his Fourth Amendment rights.

162.     If not for Dr. McDonough attempting to exercise his First Amendment right to free speech through the airing of grievances and the seeking of redress from the government, he would not have been unlawfully detained against his will and removed from a public meeting, under the false pretense of helping him file a complaint.

163.     Defendants MIAMI-DADE, ARTIME, RYAN, and DOE acted in concert to deprive Dr. McDonough of his First and Fourth Amendment rights.

164.     Defendants MIAMI-DADE, ARTIME, RYAN, and DOE actions were objectively unreasonable and a violation of Dr. McDonough's clearly established constitutional rights under the First, Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

### ELEVENTH CAUSE OF ACTION
### FALSE IMPRISONMENT
**(Plaintiff Dr. McDonough, as to Defendants MIAMI-DADE, ARTIME, RYAN, and DOE)**

165.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56 and 149 through 164, inclusive, above, as though set forth in full herein.

166.     Defendants MIAMI-DADE, ARTIME, RYAN, and DOE used threat of force and/or arrest to unlawfully detain Dr. McDonough.  Dr. McDonough, in fear for his life and safety, complied with all unlawful police orders, including staying confined to a fixed area for an unreasonable amount of time.

167.     The Defendants had no probable cause or reasonable suspicion to detain Dr. McDonough.

168.     Defendants MIAMI-DADE, ARTIME, RYAN, and DOE acting in the course and scope of their employment as police officers, unlawfully detained Plaintiff Dr. McDonough.

169.     The conduct of Defendants MIAMI-DADE, ARTIME, RYAN, and DOE was objectively unreasonable and constituted false imprisonment under Florida Law.

### CAUSES OF ACTION RELATING TO INITIAL ATTEMPTS
### TO CONTACT CITY AND MIAMI-DADE IA

### TWELFTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
**Violation of First Amendment Right – Free Speech, Petition for Redress**
**Violation of Fifth Amendment Right – Right to Due Process**
**Violation of the Driver Privacy Protection Act – 18 U.S.C. § 2721**
**(Plaintiff Dr. McDonough, as to Defendants**
**CITY, MIAMI-DADE, MONROE, MURGUIDO, AQUINO, ROLLE, and GOMEZ)**

170.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

171.     On October 30, 2012, Plaintiff Dr. McDonough contacted the Federal Bureau of Investigations regarding filing a formal complaint. Dr. McDonough was advised to file local IA complaints. Florida law generally requires agencies to take care of their own discipline, which is acceptable until the agency itself it part of the scheme to deprive rights which left Plaintiff no recourse other than the federal courts.

172.     After the incident at CAMPBELL Urgent Care, Dr. McDonough decided to wait and let things settle before filing a complaint. On January 24, 2013, Dr. McDonough left a voice message for CITY IA detective AQUINO. Dr. McDonough did not leave details of the incident(s) (date, time, location, involved parties, etc.) in his voicemail, only his contact information and that he desired to personally file a formal complaint for multiple felony violations of federal and state law.

173.     On February 12, 2013, Plaintiff Dr. McDonough, at the advice and invitation of a friend attended another Citizens Advisory Committee ("CAC") meeting and spoke out about the abuses he had suffered at the hands of MIAMI-DADE and CITY law enforcement officers.

174.     On February 13, 2013, Dr. McDonough called and left a second message for AQUINO. Also on February 13, 2013 Dr. McDonough called MIAMI-DADE IA for a second time.

175.     On February 15, 2013, just a few days after Dr. McDonough's follow-up phone calls and meeting attendance, Defendant MURGUIDO filed a false complaint with MIAMI-DADE against Dr. McDonough alleging felony aggravated stalking and felony corruption through threats against him.

176.     Though the statements were given to MIAMI-DADE as a private citizen and MURGUIDO was off-duty at the time of the incident, MURGUIDO filed his complaint in the CITY IA's office with AQUINO present.

177.     On February 28, 2013, MURGUIDO filed a false stalking injunction against Dr. McDonough.  Dr. McDonough was served with the stalking injunction on March 6, 2013 and retained counsel.  MURGUIDO subsequently failed to appear at two separate depositions and failed to appear to court, whereby the injunction was dismissed.

178.     Additionally, the filing of the false complaint and granting of the *ex parte* injunction resulted in Dr. McDonough having to surrender his firearms.

179.     The day MURGUIDO filed this injunction, he unlawfully accessed Dr. McDonough's information through the D.A.V.I.D. system, having no legitimate law enforcement purpose for doing such. MURGUIDO had not had contact with Dr. McDonough in four months and his actions were in retaliation for Dr. McDonough attempting to file a complaint(s). In violation of the Driver Privacy Protection Act, 18 U.S.C. 2721.

180.     MURGUIDO swore in the affidavit to his injunction that he was advised that Dr. McDonough had contacted IA, and that he was advised to file complaints against Dr. McDonough, even though AQUINO had not yet returned Dr. McDonough's calls. MURGUIDO later admitted, in interrogatories in a separate case, explicitly stated that it was AQUINO who had advised this.

181.     Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, AQUINO, ROLLE, and GOMEZ unlawfully obstructed Dr. McDonough's attempts to file complaints, by not returning calls or responding to complaints. Rather, they instructed their officer(s) to retaliate by using the force of the law to bring civil and criminal charges.

182.     MURGUIDO filed the injunction at the instruction of and in response to AQUINO unlawfully informing him that Dr. McDonough was trying to file complaints against him.   AQUINO instructed MURGUIDO to file complaints against Dr. McDonough first. Whereas, GOMEZ colluded with MURGUIDO to make false statements discrediting Dr. McDonough, which led to his false arrest. MURGUIDO and GOMEZ even suborned MURGUIDO's minor son to commit perjury against Dr. McDonough. Further, RAMSAY and SCIBILIA also acted to cover for GOMEZ's false statements and unlawful actions. False statements used to deprive someone of their rights and/or liberties violates due process.

183.     AQUINO and ROLLE in concert with CITY, MIAMI-DADE, MONROE, GOMEZ, and MURGUIDO willfully delayed Dr. McDonough's ability to file his complaint until MURGUIDO's complaints could be filed against Dr. McDonough and investigations upon said complaints begun.

184.     When AQUINO finally reached out to Dr. McDonough regarding his phone calls it was in March of 2013. This was two months after Dr. McDonough initially called AQUINO and a month after MURGUIDO had filed false criminal and civil complaints against Dr. McDonough. Further, Dr. McDonough had already been served with the stalking injunction and retained counsel who instructed him to not give any statements at that time, while ROLLE was being continually updated on the progress.

185.     MURGUDIO made many false statements in his injunction, calling Dr. McDonough "unstable" and claiming Dr. McDonough "has a history of clinically diagnosed mental health problems." Further, CITY and MIAMI-DADE officers labeled him a "sovereign citizen", who is considered to be a domestic terrorist. All of these allegations are untrue and a

direct attempt to discredit Dr. McDonough and greatly increase his danger in any future encounter with law enforcement.

186.     But for Dr. McDonough attempting to file complaints against Defendants MURGUIDO and fellow CITY, MIAMI-DADE, and MONROE officers, Defendant MURGUIDO would not have filed false complaints of stalking, seeking criminal charges and a civil injunction.

187.     Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, AQUINO, ROLLE, and GOMEZ were retaliating against Dr. McDonough for exercising his First Amendment rights and sought to stop him from doing so further by intimidation and false lawsuits, as well as blocking him from filing his complaints.

188.     Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, AQUINO, ROLLE, and GOMEZ acted in concert to deprive Dr. McDonough of his First Amendment Speech and Redress rights.

189.     The conduct of Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, AQUINO, ROLLE, and GOMEZ was objectively unreasonable and in violation of Dr. McDonough's clearly established Due Process rights under the First, Fifth, and Fourteenth Amendments, 18 U.S.C. § 2721 and 42 U.S.C. § 1983.

**THIRTEENTH CAUSE OF ACTION**
**ABUSE OF PROCESS**
**(Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, AQUINO, ROLLE, and GOMEZ)**

190.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

191.     Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, AQUINO, ROLLE, and GOMEZ used the criminal and civil system to silence and discredit Dr.

McDonough before he was able to file an IA Complaint against MURGUIDO and fellow CITY defendants.

192.     Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, AQUINO, ROLLE, and GOMEZ used the system to silence, intimidate, and discourage Dr. McDonough from freely exercising his First Amendment guaranteed rights of free speech and redress of grievances, as well as infringing upon his Second Amendment rights.

193.     It is clear that Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, AQUINO, ROLLE, and GOMEZ motives for filing the criminal charges and injunction against Dr. McDonough was not in furtherance of justice, but simply a tool to deny Dr. McDonough his rights, and to be a continued show of force to keep Dr. McDonough in his place as a third-class citizen.

194.     These actions of Defendants CITY, MIAMI-DADE, MONROE, MURGUIDO, AQUINO, ROLLE, and GOMEZ eventually led to an *ex parte* injunction, false arrest, and criminal proceedings.

**CAUSES OF ACTION RELATED TO THE APRIL 2013 FALSE ARREST**
**FOURTEENTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of First Amendment Right – Free Speech, Petition for Redress**
**Violation of Fourth Amendment – Warrantless Arrest, Search**
**Violation of Fifth Amendment– Due Process**
**Violation of Eighth Amendment – Cruel and Unusual Punishment**
**(Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MONROE,**
**MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER,**
**D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME)**

195.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

196.     In an effort to silence and discredit Dr. McDonough, Defendants MURGUIDO and GOMEZ gave false statements to MIAMI-DADE months after the original October 29,

2012 incident, only in response to Dr. McDonough attempting to file a complaint in January and February of 2013 with both the CITY and MIAMI-DADE.

197.     In April 2013, Defendants MURGUIDO and GOMEZ individually and in concert gave statements that they knew to be false. Defendant MURGUIDO also gave false statements in order obtain a civil injunction. In their second set of false statements, MURGUIDO and GOMEZ claimed that Dr. McDonough had trespassed onto MURGUIDO's property.  This claim is proven false by Dr. McDonough's audio recording of the October 29, 2012 incident. Whereas false statements used to deprive someone of their rights and/or liberties violates due process.

198.     Dr. McDonough's digital audio recording is of the conversation between Plaintiff and MURGUIDO in the road, in front of MURGUIDO's house. The recording made during the actual incident objectively proves that MURGUIDO never asked Dr. McDonough to leave.  Dr. McDonough never threatened MURGUIDO, did not follow MURGUIDO around, and never mentioned anything about his wife to MURGUIDO on October 29, 2012.  These statements were all falsely made against Plaintiff Dr. McDonough in MURGUIDO's sworn affidavit.

199.     Additionally, MURGUIDO, as the basis for his injunction completely fabricated the events of the alleged July 27, 2012 incident, in which MURGUIDO claims Dr. McDonough pulled into MURGUIDO's drive way blocking him in, acting in a threatening and aggressive way.  Further, MURGUIDO, as a motor patrolman for the better part of two decades, could not provide any description of the car Dr. McDonough allegedly was driving at the time and allegedly placed MURGUIDO in great fear for his life and safety.

200.     Prior to the October 29, 2012 incident, Dr. McDonough's last interaction with Defendant MURGUIDO was on or about May 7, 2009 at 10:34 am. In May of 2009, Dr. McDonough drove past MURGUIDO's house to get his license number to file a complaint. MURGUIDO approached Dr. McDonough and asked that he to come to him as a neighbor and gentleman in the future with any problems he may have in lieu of filing a complaint.  They had NO communication or interaction from May 2009 until October 2012.

201.     Between February 15, 2013 and April 15, 2013, CITY, MIAMI-DADE, and MONROE officers were in contact with one another, conspiring and colluding against Dr. McDonough in an effort to keep him from filing a complaint. Defendant AQUINO acting in his official capacity as an IA officer, refused to take a complaint from Dr. McDonough, but instead contacted the accused officer and persuaded him to file criminal charges and an injunction.

202.     Defendants AQUINO, MURGUIDO, GOMEZ, CITY, and MONROE then acted with MIAMI-DADE to further block Dr. McDonough by arresting him on felony aggravated stalking and felony corruption through threats. Dr. McDonough was facing ten years in prison for simply exercising his First Amendment rights.

203.     On April 15, 2013, Defendant MIAMI-DADE, without a warrant, arrested Dr. McDonough at his home.

204.     Defendants MIAMI-DADE, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, and ZAPATAS, all under the command of defendant ARTIME effectuated the arrest.

205.     Dr. McDonough was arrested and transported by Defendant SUAREZ to the South District Station. For over an hour, Dr. McDonough repeatedly requested the probable cause and/or reason for the arrest to which the officers unlawfully refused to answer him. Dr. McDonough was handcuffed and placed in the back of a police car by Defendant SUAREZ,

who failed to secure Dr. McDonough's seat belt. Defendant SUAREZ maliciously drove erratically and recklessly causing Dr. McDonough, whose hands were bound to be thrown around the back of the vehicle.

206.    The actions of Defendant SUAREZ caused Dr. McDonough to suffer great pain and permanent nerve damage to his right hand and wrist. The MIAMI-DADE booking officers refused to provide Dr. McDonough medical treatment for his wrist injury and Dr. McDonough's prescription eyeglasses were taken away, leaving him with impaired vision.  Additionally, MIAMI-DADE Officer Rudolf, who transported Dr. McDonough from the station to the jail, also drove in an aggressive manner to purposefully squash Dr. McDonough between two large suspects. This caused further injury to Dr. McDonough's right wrist as well as pain and injury to his right hip. Such treatment is cruel and unusual.

207.    As was the intent of the Defendants when they arrested him, Dr. McDonough was then transported to a MIAMI-DADE jail facility where he was embarrassed and humiliated further. Dr. McDonough was forced to strip naked, bend over, and manually spread his butt cheeks and cough while a guard was observing.  This was in a room with an open door, while people were walking past and observed him in this manner.

208.    Defendants CITY, MIAMI-DADE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME acted in concert to effectuate an unreasonable, warrantless arrest in front of Dr. McDonough's home and family based on information known to be false and/or fabricated, while lacking probable cause or a warrant, in retaliation for Dr. McDonough freely exercising his First Amendment Rights. These actions were meant to keep him from further exercising his constitutional rights.

209.    Defendants CITY, MIAMI-DADE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME acting under the color of law, went to Dr. McDonough's most sacred and protected place, his home, and without an arrest warrant, probable cause, or informing him of the charges, summarily arrested him in violation of his First and Fourth Amendment rights in front of his family.

210.    Defendants CITY, MIAMI-DADE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME did seek to physically punish and humiliate Dr. McDonough by treating him with a complete lack of human regard, in violation of his Eight Amendment rights.

211.    Defendants CITY, MIAMI-DADE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME acted in concert to deprive Dr. McDonough of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

212.    The conduct of defendants CITY, MIAMI-DADE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME was objectively unreasonable and a violation of Dr. McDonough's clearly established Constitutional rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments and 42 U.S.C. § 1983.

### FIFTHTEENTH CAUSE OF ACTION
**VIOLATION OF 42 U.S.C. § 1985**
**Conspiracy to Interfere with Civil Rights**
**(Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MONROE, ROLLE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME)**

213.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56 and 195 through 212, inclusive, above, as though set forth in full herein.

214.     Defendants CITY, MIAMI-DADE, MONROE, ROLLE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME all knew or should have known that they had no lawful authority to detain Dr. McDonough and deprive him of his constitutional rights. MURGUIDO and GOMEZ, as law enforcement officers who made false statements that led to a false arrest, are themselves liable for the false arrest. Whereas MIAMI-DADE officers knew or should have known that there was no probable cause of any crime for which Dr. McDonough could have been arrested without a warrant.  Even assuming the statements of MURGUIDO and GOMEZ were true, there was no probable cause present to get a warrant based on the facts. These actions were taken solely in retaliation of Dr. McDonough exercising his rights to speech and petition.

215.     CITY Defendant AQUINO was in contact with MIAMI-DADE Defendant ALVAREZ and relaying this information to Chief ROLLE before, during, and after Dr. McDonough's false arrest showing collusion between the agencies.

216.     Defendants MURGUIDO and GOMEZ gave false statements around the same time in April 2013, along with MURGUIDO's son. The alleged facts of the statements made by all three align, though they do not align with the actual evidence of the incident. Further, MURGUIDO had given false statements in February 2013, the facts thereof do not completely align with the facts of the later statement, showing collusion and an understanding between MURGUIDO and GOMEZ to deny Dr. McDonough his rights.

217.     Defendants CITY, MIAMI-DADE, MONROE, ROLLE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME cooperated willfully and purposefully, and acted in concert and agreement to deny Dr. McDonough his constitutionally protected civil rights.

218.     Defendants CITY, MIAMI-DADE, MONROE, ROLLE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME acted to deny Dr. McDonough his rights through a "class-based" discriminatory animus.

219.     In retaliation for Dr. McDonough's earlier encounter with CITY police officers, and in retaliation for attempting to file a complaint, Defendants CITY, MIAMI-DADE, MONROE, ROLLE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME created a different second class of citizen and acted adversely to that class of citizens denying them their rights.

220.     Defendants CITY, MIAMI-DADE, MONROE, ROLLE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME and their "don't mess with cops" attitude, as stated earlier, has created an environment where one class of citizens, law enforcement, their friends and family are entitled to enjoy their rights as well as special above the law privileges, where as a second class of citizens unconnected, or even worse a third class of citizen dissenters are not.

221.     Defendants CITY, MIAMI-DADE, MONROE, ROLLE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME have furthered their conspiracy to deny rights to citizens they consider third-class when they unlawfully detained, unlawfully arrested, physically punished, and humiliated Dr.

McDonough and estopped him from formally filing a complaint, as well as violating multiple constitutional and civil rights.

222.     The conduct of Defendants CITY, MIAMI-DADE, MONROE, ROLLE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME was objectively unreasonable and a violation of Dr. McDonough's clearly established constitutional and civil rights and in violation of 42 U.S.C. § 1985.

**SIXTEENTH CAUSE OF ACTION**
**FALSE IMPRISONMENT**
**(Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MURGUIDO,**
**GOMEZ, AQUINO, ALVAREZ, WEBSTER,**
**D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME)**

223.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56 and 195 through 222, inclusive, above, as though set forth in full herein.

224.     Defendants CITY, MIAMI-DADE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME used threat of force to unlawfully arrest Dr. McDonough. Dr. McDonough, in fear for his life and safety, complied with all unlawful police orders. Dr. McDonough was falsely held for over 18 hours, most of which while confined to a jail cell infested with rats and in a holding cell at the station which lacked a functioning toilet.

225.     The Defendants had neither probable cause, reasonable suspicion, nor warrant to arrest Dr. McDonough.

226.     Defendants CITY, MIAMI-DADE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME acting in the course and scope of their employment as police officers, unlawfully arrested and confined

Plaintiff Dr. McDonough to a jail cell and holding cell with inadequate, unsanitary, and cruel conditions.

227.     The conduct of Defendants CITY, MIAMI-DADE, MURGUIDO, GOMEZ, AQUINO, ALVAREZ, WEBSTER, D. RODRIGUEZ, SUAREZ, ZAPATAS, and ARTIME was objectively unreasonable and constituted false imprisonment under Florida Law.

**CAUSES OF ACTION RELATED TO MEETING WITH CHIEF ROLLE**
**SEVENTEENTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of First Amendment Right – Free Speech, Petition for Redress**
**(Plaintiff Dr. McDonough, as to Defendants CITY,**
**ROLLE, AQUINO, SURMAN, and MURGUIDO)**

228.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

229.     On January 30, 2014 Dr. McDonough was eating lunch with a friend at a local restaurant in Florida City.   During lunch, Dr. McDonough told his friend that he was considering arranging a meeting with CITY police chief ROLLE to file a formal complaint about the prior incidents of abuse by CITY and MIAMI-DADE officers.

230.     By pure coincidence, Chief ROLLE entered the restaurant to have lunch as well. Upon his own initiative, Dr. McDonough's friend talked to ROLLE and informed him that he has a friend who wanted a meeting with him.  ROLLE advised him to inform his friend to call his office and ROLLE would meet with him.

231.     The following day, on January 31, 2014 at noon, Defendant MURGUIDO drove past Dr. McDonough's house and began loudly revving the engine on his motorcycle and chirping his siren. Considering MURGUIDO's act as further retaliation and harassment, Dr. McDonough called ROLLE, leaving a message with his secretary requesting a meeting.  A few

days later ROLLE returned Dr. McDonough's call and scheduled a meeting the following Friday.

232.     Dr. McDonough met with ROLLE in his office on February 7, 2014. ROLLE showed up over an hour and a half late to a meeting he scheduled. Dr. McDonough, fearing further retaliation and the twisting of his words, placed a recorder in plain sight on the desk between himself and ROLLE and recorded the conversation, all while having a neutral witness present for his safety.

233.     At the meeting, Dr. McDonough provided ROLLE with evidence of MURGUIDO's prior employment history which included making multiple false statements to supervisors when employed with Hialeah Police Department and the Office of the State Attorney, incidents of overreacting and being discourteous to the public, as well as incidents of falsifying public records to retaliate against citizens. Dr. McDonough also provided evidence of MURGUIDO making false statements about drug use during his employment process with CITY.

234.     Dr. McDonough also provided ROLLE substantial evidence of MURGUIDO's and AQUINO's unlawful actions against Dr. McDonough and the violations of his rights.

235.     Chief ROLLE attempted to bring Defendant SURMAN into the room, but Dr. McDonough protested stating that he was also involved in the conspiracy to deprive Dr. McDonough of his rights. ROLLE then brought Defendant AQUINO in the room without announcing it first, though Dr. McDonough had also protested against AQUINO's presence as well.

236.     Throughout the meeting, ROLLE repeatedly promised Dr. McDonough he would suffer no more retaliation from MURGUIDO and that if he (ROLLE) found out one of his officers was retaliating against a citizen, that officer would be fired.

237.     Claiming that they could only act on incidents from that day forward and that the "Police Officers Bill of Rights" blocked Dr. McDonough from a filing a complaint, ROLLE and AQUINO refused to allow Dr. McDonough to file a complaint about MURGUIDO's actions from 2012-2013.

238.     ROLLE and AQUINO only allowed Dr. McDonough to file a complaint against MURGUIDO for MURGUIDO's driving past McDonough house on January 31, 2014 while "chirping his siren" and "revving his engine."  They later used this restricted complaint to further attempt to discredit Dr. McDonough.

239.     In response to the restricted complaint, AQUINO did a full investigation into McDonough, attempting to discredit him. AQUINO falsified an IA report, claiming that Dr. McDonough did not try to reinitiate his complaint until after MURGUIDO had first filed his complaint.  AQUINO stated in the report that Dr. McDonough only filed his complaint in response to MURGUIDO's filing.  However, Dr. McDonough never was permitted to file a complaint with Homestead Police Department that could be reinitiated, for MURGUIDO's actions on October 29, 2012 and thereafter, until MURGUIDO's actions in 2014.

240.     AQUINO's report omitted the fact that Dr. McDonough tried to file a complaint shortly after the October 2012 incident and that his calls were unreturned for over two months. AQUINO also omitted that he advised MURGUIDO that Dr. McDonough was trying to file a complaint and that MURGUIDO should file against Dr. McDonough first.  He omitted this occurred at least a month before he returned Dr. McDonough's call.

241.     AQUINO's report contained a false narrative regarding Dr. McDonough's relationship and correspondence with State Representative Holly Raschein's legislative aide Erin Muir. AQUINO falsely stated that Erin Muir claimed that Dr. McDonough was accusing her and Raschein's office of conspiring against him. Dr. McDonough had contacted Ms. Muir regarding his treatment by officers of Defendants CITY and MIAMI-DADE. Ms. Raschein reached out to the Mayor of Homestead on Dr. McDonough's behalf. This was all done prior to Dr. McDonough learning of MURGUIDO's injunction or criminal complaint.   Email correspondence between Dr. McDonough and Mrs. Muir before and after the closeout of AQUINO's investigation disproves AQUINO's statements in his report about such correspondence.

242.     In the report, AQUINO also made false statements including that Dr. McDonough took a plea and that Dr. McDonough understood because he was guilty.  AQUINO further wrote that Dr. McDonough acknowledged nothing could be done to MURGUIDO and that Dr. McDonough was inspired to go to law school and run for political office.  The audio recording of the meeting disproves these statements made in AQUINO's report.

243.     Despite being told during the meeting that Dr. McDonough believed Defendant SURMAN was part of the conspiracy to deny Dr. McDonough his rights, Chief ROLLE delegated the investigation of the January 31, 2014 incident to Sergeant SURMAN. This was the only complaint Dr. McDonough was allowed to file. SURMAN concluded that MURGUIDO was in pursuit of an ATV the day he revved his engine and sounded his sirens in front of Dr. McDonough's house.  However, the allegations made by MURGUIDO and SURMAN do not match the facts of this alleged incident. Further, ROLLE had contacted

SURMAN during the February 7, 2014 meeting and had already concocted this alibi for MURGUIDO.

244.     SURMAN claimed MURGUIDO did not violate policy or law, even though admitting that MURGUIDO was in pursuit of a vehicle outside of his jurisdiction which he did not report.  The CITY's policy manual and the cooperative agreement with MIAMI-DADE, requires such instances to be immediately reported to both departments. Further, the cooperative agreement forbids MURGUIDO from engaging in routine law enforcement functions while in MIAMI-DADE jurisdiction.

245.     Conveniently for MURGUIDO, there is no public record of this out-of-jurisdiction pursuit other than the account found in SURMAN's IA report addressing the complaint ROLLE and AQUINO allowed Dr. McDonough to file. The lack of public record is itself a violation of CITY's policy, contrary to SURMAN's claims that no policy was violated.

246.     Defendants CITY, ROLLE, AQUINO and SURMAN acted in concert to block Dr. McDonough from exercising his petition and due process rights.  ROLLE and AQUINO refused to allow Dr. McDonough to file a claim in violation of the First amendment and the Florida Constitution.  Whereas, SURMAN improperly investigated the restricted complaint which was allowed to be filed.

247.     The investigation conducted by AQUINO and SURMAN into the complaint Dr. McDonough was allowed to file was biased, false, and ignored established policies and law. MURGUIDO also made false official statements responding to this complaint. These reports only served to silence and discredit Dr. McDonough, all while serving to continually cover up the actions of the CITY's officers, specifically Defendant MURGUIDO.

248.     Defendants CITY, ROLLE, AQUINO, and SURMAN acted in concert to deprive Dr. McDonough of his First Amendment rights.

249.     The conduct of Defendants CITY, ROLLE, AQUINO and SURMAN was objectively unreasonable and a violation of Dr. McDonough's clearly established Constitutional rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

**CAUSES OF ACTION RELATING TO MEETING WITH MIAMI-DADE IA**
**EIGHTEENTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of First Amendment Right – Free Speech, Petition for Redress**
**Violation of First Amendment Right – Right to Gather Information**
**(Plaintiff Dr. McDonough, as to Defendants MIAMI-DADE,**
**PATTERSON, CAMERON, COOPER, and RYAN)**

250.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

251.     Dr. McDonough was advised by Defendant AQUINO during the February 2014 meeting that he (AQUINO) was using the 180-day time limit in the "Police Officer's Bill of Rights" to shield MURGUIDO from Dr. McDonough filing a complaint for the earlier actions. This statement was omitted in AQUINO's report.  Dr. McDonough attempted to correct this information by sending a certified letter to both ROLLE and AQUINO, which was ignored. A copy of the letter, however, was placed in AQUINO's report.

252.     Dr. McDonough copied Defendant PATTERSON on the certified letter, who was at the time Director of the MIAMI-DADE Police Department. Director Patterson sent Dr. McDonough's complaint to Detective CAMERON from MIAMI-DADE Professional Compliance Bureau (PCB), also known as IA.

253.     CAMERON contacted Dr. McDonough on March 14, 2014, at PATTERSON's request and left a message proposing a date for a meeting. Dr. McDonough agreed to meet, but

requested a different date so that he would be able to bring a witness for his protection.  Dr. McDonough also advised CAMERON that he would be recording the meeting to protect all involved parties. CAMERON agreed to this request and set a different meeting time.

254.     On March 19, 2014, Dr. McDonough and his father-in-law David Nero drove to MIAMI-DADE PCB. Once inside the bureau, Dr. McDonough and Mr. Nero were approached by defendants CAMERON, COOPER, and RYAN.

255.     Dr. McDonough made it known that he (Dr. McDonough) and RYAN had previous interactions and that Dr. McDonough was there at least in part due to RYAN's actions against him.

256.     COOPER asked Dr. McDonough if he had a recording device. Dr. McDonough confirmed that as previously stated, he had brought a recorder.  COOPER, in violation of Dr. McDonough's clearly established First Amendment right to record the actions of public officials on public property, forbade Dr. McDonough from recording.

257.     Dr. McDonough, in fear for his safety and further abuse of his constitutional rights, began to leave. The officers pleaded with Dr. McDonough to give a statement. Mr. Nero persuaded Dr. McDonough to give his statement anyway as they had already driven there and Mr. Nero was there to witness the encounter.

258.     CAMERON, COOPER, and RYAN then immediately attempted to separate Dr. McDonough from Mr. Nero by telling Mr. Nero to sit on the far side of the lobby away from the hallway and attempting to lead Dr. McDonough down a hallway with the three of them, alone and without means for objectively documenting the interaction for his safety.

259.      Dr. McDonough was put in immediate fear for his life, safety, and liberty and immediately left without giving a statement or filing a complaint. As he was leaving, he asked for the officers' business cards. Defendant RYAN refused to provide one, as required by policy.

260.      Dr. McDonough kept in correspondence with PATTERSON regarding the failed attempt at a meeting. PATTERSON was aware of the treatment of Dr. McDonough and his concerns regarding why the meeting was improper. Neither PATTERSON nor CAMERON were able to provide authority as to why Dr. McDonough could not record the meeting. Subsequently, Dr. McDonough was labeled as uncooperative and his complaint was closed out, to further discredit Dr. McDonough.

261.      By denying Dr. McDonough the right to record and gather information about a public official, Defendants MIAMI-DADE, PATTERSON, CAMERON, COOPER, and RYAN acted in concert to deprive Dr. McDonough of his First Amendment rights of speech and press.

262.      By keeping Dr. McDonough from filing a complaint regarding the abuses of MIAMI-DADE officers, Defendants MIAMI-DADE, PATTERSON, CAMERON, COOPER, and RYAN acted in concert to deprive Dr. McDonough of his First Amendment rights of free speech and petition.

263.      The conduct of Defendants MIAMI-DADE, PATTERSON, CAMERON, COOPER, and RYAN was objectively unreasonable and a violation of Dr. McDonough's clearly established Constitutional rights under the First and Fourteenth Amendments, and 42 U.S.C. § 1983.

**CAUSES OF ACTION RELATING TO 2014 MIAMI-DADE CAC MEETINGS**
**NINETEENTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1981 AND 42 U.S.C. § 1983**
**Violation of First Amendment Right – Free Speech, Petition for Redress**
**Violation of Fourteenth Amendment Right – Equal Protection/Disparate Treatment**
**(Plaintiff Dr. McDonough, as to Defendants MIAMI-DADE, LEE, and BYRD)**

264.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

265.     After being blocked from exercising his First Amendment right on numerous occasions, and after multiple civil rights violations, Dr. McDonough became more out spoken about police abuse.

266.     In April of 2014, Dr. McDonough attended his neighborhood community watch meeting.  At that meeting, MIAMI-DADE Officer Robert Diaz (DIAZ) was present.  During the meeting, DIAZ mentioned the short staffing of MIAMI-DADE officers with regards to being able to timely respond to Dr. McDonough's neighborhood, stating that sometimes CITY officers would cover calls for them and that they do a great job. Dr. McDonough responded that CITY does not always do a great job. It was then made known to DIAZ, by others in attendance, that Dr. McDonough had issues with CITY's enforcement. DIAZ subsequently invited Dr. McDonough to speak to him after the meeting.

267.     After the meeting, Dr. McDonough spoke with DIAZ about his issues with MURGUIDO. Dr. McDonough gave Diaz the shortened facts and attempted to provide DIAZ with evidence and documentation proving his allegations.  DIAZ requested Dr. McDonough email him a complaint and attach the supporting evidence thereto.

268.     On April 14, 2014, Dr. McDonough emailed his complaint against MURGUIDO to DIAZ as requested.  DIAZ asked Dr. McDonough to contact him at the end of the week. When Dr. McDonough contacted DIAZ at the end of the week, DIAZ informed Dr. McDonough that his complaint was substantial and gave ample evidence of multiple felony violations under Florida law.  DIAZ then advised Dr. McDonough that his superiors had decided his complaint was "over their head" and they would not pursue it.  DIAZ explicitly

refused to inform Dr. McDonough who his supervisor was, but stated that Dr. McDonough knew him or who he was.

269.     In May of 2014, Dr. McDonough returned to the MIAMI-DADE CAC meeting. Before the meeting, Dr. McDonough emailed the new major of the district, BYRD, who had taken over from ARTIME. It was explained to BYRD in the email that Dr. McDonough's complaint was not to be filed with IA, as it did not involve MIAMI-DADE personnel.  The email stated that MURGUIDO had committed felonies in BYRD's jurisdiction and cited Florida law and MIAMI-DADE policy which required action to be taken.

270.     Dr. McDonough spoke publicly at the May 2014 CAC meeting and asked BYRD why MIAMI-DADE was refusing to act upon his complaint.  BYRD advised Dr. McDonough that his complaint had been forward to IA, but BYRD could not answer why DIAZ had informed Dr. McDonough that his complaint would not be acted upon. Further, Dr. McDonough never received any further notice of this complaint.

271.     Shortly after Dr. McDonough finished speaking, other members of the public who were in attendance began to ask questions regarding the abuse Dr. McDonough suffered. MIAMI-DADE Lieutenant LEE, without authority to do so, attempted to adjourn the meeting in an attempt to keep other citizens from speaking out. The meetings are presided over by a civilian board that opens and closes the meeting. The meeting was recorded by MIAMI-DADE, Dr. McDonough, and others.

272.     Over the course of 2014, Dr. McDonough attended several subsequent CAC meetings. At many of these meetings, Dr. McDonough asked BYRD how he could file a criminal complaint with MIAMI-DADE.  BYRD, on video and audio, repeatedly refused to allow Dr. McDonough to file a complaint with MIAMI-DADE for felony crimes committed in

her jurisdiction by persons who happened to be police officers.  However, BYRD did work with and allow Sheila George (GEORGE), who is black, to easily file a complaint. Defendant MURGUIDO was also allowed to file a criminal complaint, resulting in Dr. McDonough's arrest in April 2013. The actions of BYRD and LEE display "race-based" animus, as well as "class-based" animus, in their actions towards Dr. McDonough. Defendant MIAMI-DADE has repeatedly refused to allow Dr. McDonough to file complaints of criminal activity, when MIAMI-DADE is required under policy to accept criminal complaints, and has denied Dr. McDonough access to this procedure.

273.    At the June 2014 CAC meeting, LEE approached Dr. McDonough before the beginning of the meeting and advised Dr. McDonough that since BYRD was not present, he would not be allowed to discuss any of his concerns.  Shortly thereafter, some CAC board members and guests were allowed to enter the meeting.  LEE instructed those under his leadership to tell the remaining people the meeting was cancelled and to leave.

274.    Those excluded from this public meeting included Dr. McDonough and his supporters.  Council board members Janet Fuqua and Robert Holley were inadvertently excluded and told that the meeting was canceled. Ms. Fuqua phoned the CAC chairman Gary Dufek to check if the meeting was cancelled and was told that the meeting was not cancelled, but was in progress.

275.    When Ms. Fuqua gained access to the meeting, Dr. McDonough and his guests were also let into the public meeting.

276.    Howard Ollman, a cameraman who was present with Dr. McDonough, asked LEE why they had been lied to about the meeting being cancelled.  LEE then threatened to

remove Mr. Ollman from the public meeting. Many people in the meeting thought LEE's threat was directed at everyone, including board members and Dr. McDonough.

277.     At the October 2014 CAC meeting, DIAZ was present.  After the meeting, Dr. McDonough asked DIAZ who his supervisor was that had claimed Dr. McDonough's criminal complaint was "over his head."  LEE, upon seeing Dr. McDonough speaking with DIAZ, immediately interjected and ordered DIAZ to stop speaking with Dr. McDonough.

278.     DIAZ works in the Neighborhood Resource Unit (NRU).  LEE is the commander of the NRU South District and is DIAZ's supervisor.  Earlier, LEE had actively attempted to block Dr. McDonough's access to petition for redress as well at the June 2014 meeting.  No other officers between DIAZ and BYRD are known in the chain of command, forcing the assumption that it was LEE who had blocked Dr. McDonough's complaint.

279.     At the November 2014 CAC meeting, the minutes from the June meeting were being reviewed, as Mr. Dufek had refused to sign off on them earlier due to concerns they were false. Dr. McDonough specifically asked if the minutes from the June meeting reflected that LEE had threatened to have guests removed from the meeting for asking questions about why they had been lied to and excluded from the meeting.  LEE immediately then interjected, cutting off Mr. Dufek, who was attempting to answer McDonough. LEE, in a threatening manner, aggressively asked Dr. McDonough, "You got something you want to say on your own, sir?" LEE then falsely claimed the minutes wouldn't show as such, because it never happened, all while attempting to discredit Dr. McDonough.

280.     For the duration of the meeting LEE attempted to intimidate Dr. McDonough by aggressively staring him down and mouthing words whenever Dr. McDonough would make eye contact with him.  LEE's body language was tense and aggressive and at one point aggressively

"bucked" his chest and arms at Dr. McDonough trying to further intimidate him. This was understood and nonverbally communicated as fighting words/behavior and was witnessed by several people present.

281.     Defendant LEE and/or other MIAMI-DADE officers falsified the minutes of the June 2014 meeting to correspond with the false statements that LEE made to Dr. McDonough through email.  Both of these are public record.

282.     The June 2014 minutes falsely claim that the meeting was delayed due to the security concern of a guest, Matthew Oakey (OAKEY), having a firearm.  OAKEY did not have a firearm and no officer questioned OAKEY until after he had gone through security to the second floor and was in the meeting room.  OAKEY was questioned about having an empty holster on him after entering the meeting room. OAKEY lifted his shirt to show the empty holster and the issue was immediately resolved. This incident, however, was later falsely used as cover for the civil rights and Florida law violations by claiming that the meeting was delayed and this non-issue was an excuse.

283.     The meeting was not delayed by this alleged safety/security incident and a recording of the meeting in the possession of MIAMI-DADE shows as much.  MIAMI-DADE officers falsified official records to cover up their attempted unlawful exclusion of Dr. McDonough and others from a public meeting.  The publishing of the approved minutes for the June 2014 meeting was delayed for months because Mr. Dufek refused to sign off on them due to related and/or unrelated inaccuracies, which MIAMI-DADE was refusing to correct. MIAMI-DADE even attempted to pass off the minutes into the official record without Mr. Dufek's signature upon them as required by policy, since he is the Chairman of the board.

284.     Defendants MIAMI-DADE, BYRD, and/or LEE have acted with corrupt intent to: falsify public records under Fla. Stat. § 838.022(1)(a); destroy public records or cover up their destruction under Fla. Stat. § 838.022(1)(b); and/or block Dr. McDonough's complaint(s) of felony crimes affecting their department under Fla. Stat. § 838.022(1)(c).

285.     Defendants MIAMI-DADE, LEE, and BYRD moved the meeting location from neutral property to the police department, against the wishes of the board, having a chilling effect on free speech. Individuals like Dr. McDonough no longer felt safe attending and voicing their concerns for fear of immediate retaliation with possible incarceration.

286.     Defendants MIAMI-DADE, LEE, and BYRD have further tried to deter citizens from exercising their free speech rights by failing to post accurate time and location information, as required by Florida Sunshine Law's public notice requirement of public meetings. Subsequently, these combined actions led to a dramatic decrease in attendance at public meetings and BYRD refused to have this corrected after months of documented complaints about it.

287.     Defendants MIAMI-DADE, LEE, and BYRD have actively blocked Dr. McDonough from exercising his First Amendment rights by denying him access to public meetings, denying him the right to speak at public meetings, and by otherwise acting adversely to Dr. McDonough's First Amendment rights.  BYRD refused to endorse or even accept an application from Dr. McDonough to be a member of the CAC because of his race.  This was after BYRD nominated a black man, Mark Harris, with a felony conviction to be a board member.

288.     Defendants MIAMI-DADE, LEE, and BYRD who are both black acted in concert to deprive Dr. McDonough of his First Amendment rights with "race-based" and "class-based" discriminatory animus.

289.     The conduct of Defendants MIAMI-DADE, LEE, and BYRD was objectively unreasonable and a violation of Dr. McDonough's clearly established Constitutional rights under the First and Fourteenth Amendments, 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

### CAUSES OF ACTION RELATED TO CONTACT WITH MONROE IA
### TWENTIETH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### Violation of First Amendment Right – Free Speech, Petition for Redress
### (Plaintiff Dr. McDonough, as to Defendants MONROE, RAMSAY, and SCIBILIA)

290.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

291.     In August of 2014, Dr. McDonough contacted MONROE county Sheriff RAMSAY regarding filing a complaint against officer GOMEZ. RAMSAY had the head of IA, Captain SCIBILIA, return Dr. McDonough's call. On August 12, 2014, SCIBILIA contacted Dr. McDonough and provided an email address where he could send information about crimes and civil rights violations committed by GOMEZ. All subsequent communication was through email and copied to RAMSAY as well.

292.     Dr. McDonough emailed SCIBILIA his complaint against GOMEZ on August 13, 2014.  This email and attachments consisted of 1) a recording of the conversation between Dr. McDonough and MURGUIDO; 2) a recording of GOMEZ's sworn statements to MIAMI-DADE about this conversation; 3) a short complaint against GOMEZ outlining the falsehoods and inconsistencies; and 4) MURGUIDO's sworn statements about the conversation.

293.     SCIBILIA immediately responded to Dr. McDonough's complaint by asking if he had permission to record MURGUIDO. SCIBILIA attempted to discredit and disregard Dr. McDonough's complaint by implying that Dr. McDonough had obtained the recording illegally. Dr. McDonough informed SCIBILIA how the recording was lawfully made. SCIBILIA agreed that it was lawfully made and replied that he would begin an investigation.

294.     On September 11, 2014, SCIBILIA closed the complaint out as "unfounded". SCIBILIA stated that although the statements of Dr. McDonough, MURGUIDO, and GOMEZ were in conflict, Dr. McDonough had provided no "objective" evidence that GOMEZ had made any false statements.

295.     On September 13, 2014, Dr. McDonough responded to SCIBILIA's letter and provided him with the definitions of "objective" and "subjective" from Black's Law Dictionary and informed him that the recordings were by definition "objective".  SCIBILIA refused to re-examine his conclusions based upon the use of incorrect definitions of key concepts in his analysis.

296.     Dr. McDonough then requested to file another complaint against GOMEZ for illegal seizure and false imprisonment, as GOMEZ admitted under oath that he participated in Dr. McDonough's detention on October 29, 2012, even telling Dr. McDonough to stop and not leave until other officers arrived.  There was no reason to question the objectiveness of the recording of GOMEZ as it was made under oath to ALVAREZ and is official public record. SCIBILIA refused to respond to Dr. McDonough's correspondence and did not allow him to file a second complaint. RAMSAY was aware of these events and failed to intervene.

297.     Defendants MONROE, RAMSAY, and SCIBILIA, in retaliation for Dr. McDonough exercising his First Amendment rights, discredited and disregarded his complaint

without a proper, thorough, and complete investigation, contrary to objective evidence available.

298.      Defendants MONROE, RAMSAY, and SCIBILIA actively blocked Dr. McDonough from filing a complaint against GOMEZ for false arrest and unlawful detainment.

299.      Defendants MONROE, RAMSAY, and SCIBILIA acted in concert to deprive Dr. McDonough of his First Amendment rights to petition by filing formal complaints.

300.      The conduct of Defendants MONROE, RAMSAY, and SCIBILIA was objectively unreasonable and a violation of Dr. McDonough's clearly established Constitutional rights under the First, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983.

**CAUSES OF ACTION RELATED TO MEDIA ARTICLE**
**TWENTY- FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of First Amendment Right – Free Speech, Petition for Redress**
**(Plaintiff Dr. McDonough, as to Defendants**
**CITY, MURGUIDO, SURMAN, and ROLLE)**

301.      Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

302.      On August 19, 2014 at 11:00 pm, the organization Photography Is Not a Crime (PINAC) published an article detailing the October 29, 2012 incident between Dr. McDonough and MURGUIDO, including Dr. McDonough's false arrest.

303.      On August 20, 2014, MURGUIDO went to MIAMI-DADE and attempted to file another criminal stalking complaint against Dr. McDonough claiming the publishing of the article as the sole element of the offense.  ALVAREZ refused to act upon MURGUIDO's complaint this time.  MURGUIDO only alleged protected activity and Dr. McDonough did not write or publish the article.

304.     On August 22, 2014, MURGUIDO filed his second stalking injunction against Dr. McDonough and was granted his second *ex parte* injunction against Dr. McDonough.

305.     MURGUIDO alleged the publishing of the article was stalking activity and that Dr. McDonough allegedly tried to file a false complaint(s) against him.  MURGUIDO claimed that Sergeant SURMAN, his direct supervisor, told him on August 19, 2014 about the article, encouraging him to file the complaints.  MURGUIDO never elaborated upon a single falsehood or statement in the alleged complaint(s) made by Dr. McDonough, only claiming they were false.

306.     MURGUIDO again failed to appear for a scheduled hearing and deposition. When MURGUIDO failed to show up for the hearing, the second injunction was dismissed like the first.

307.     Dr. McDonough informed Defendant ROLLE that MURGUIDO was still retaliating against him and ROLLE failed to take any corrective action, or even respond, as he had previously promised.

308.     The second injunction was dismissed on October 15, 2014. Dr. McDonough, posted online in the Homestead forum of www.leoaffairs.com that it was an act of cowardice to file two false injunctions and then skip both hearings, as well as three scheduled depositions.

309.     Defendant SURMAN also notified MURGUIDO of Dr. McDonough's online posting, which was also posted on www.leoaffairs.com. Two days later, on October 17, 2014, in retaliation of Dr. McDonough's online posting, MURGUIDO filed a motion to vacate the dismissal of the second injunction.  The dismissal was vacated and Dr. McDonough was served with his third *ex parte* injunction. Again, MURGUIDO failed to show up for the hearing and this time MURGUIDO's injunction was dismissed with prejudice.

67

310.     Dr. McDonough was engaging in constitutionally protected free speech and freedom of the press when PINAC published the story detailing Dr. McDonough's history of abuse with CITY, MIAMI-DADE, and MURGUIDO.  Further, Dr. McDonough was exercising his right to petition by trying to file a complaint(s).

311.     In retaliation of Dr. McDonough exercising his constitutionally protected rights, Defendants CITY, MURGUIDO, and SURMAN attempted to bring false criminal charges and civil injunctions. All of these were unfounded and eventually dismissed.

312.     By bringing charges and injunctions, Defendants CITY, MURGUIDO, and SURMAN actively sought to silence Dr. McDonough and deter him from continuing to speak out.

313.     Defendants CITY, MURGUIDO, and SURMAN acted in concert to deprive Dr. McDonough of his First Amendment rights.

314.     The conduct of Defendants CITY, MURGUIDO, and SURMAN was objectively unreasonable and a violation of Dr. McDonough's clearly established Constitutional rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

**TWENTY-SECOND CAUSE OF ACTION**
**ABUSE OF PROCESS**
**(Plaintiff Dr. McDonough, as to Defendants CITY, MURGUIDO, and SURMAN)**

315.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56 and 301 through 314, inclusive, above, as though set forth in full herein.

316.     Defendants CITY, MURGUIDO, and SURMAN used the criminal and civil judicial system to attempt to silence and discredit Dr. McDonough and keep him from speaking out about the abuses he suffered.

317.     Defendants CITY, MURGUIDO, and SURMAN used the judicial system to silence, intimidate, and discourage Dr. McDonough from freely exercising his First Amendment guaranteed rights of free speech and freedom of press, in addition to infringing upon his Second Amendment rights.

318.     It is clear Defendants CITY, MURGUIDO, and SURMAN's motives for filing the second and third injunction against Dr. McDonough was not in furtherance of justice, but simply a tool to deny Dr. McDonough his rights and a continued show of force to keep Dr. McDonough silenced and in his place as a third-class citizen.

**CAUSES OF ACTION RELATED TO PUBLISHING VIDEOS OF PUBLIC CONCERN**
**TWENTY-THIRD CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of First Amendment Right – Free Speech, Petition for Redress**
**(Plaintiff Dr. McDonough, as to Defendants CITY,**
**ROLLE, MURGUIDO, AQUINO, and MEAD)**

319.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

320.     After trying to exhaust every formal avenue of complaint and being retaliated against for exercising his free speech rights, Dr. McDonough continued to speak out against CITY and MIAMI-DADE by using alternate forms of media including online forums, www.leoaffairs.com, Facebook, PINAC, and YouTube.

321.     Dr. McDonough published YouTube videos in November of 2014 documenting ROLLE's misconduct. In one video, Dr. McDonough presented evidence that ROLLE had intentionally destroyed or knowingly concealed the documents Dr. McDonough had provided him during their February 7, 2014 meeting.

322.     In another video published to YouTube, Dr. McDonough presented evidence that ROLLE and AQUINO would not allow Dr. McDonough to file a complaint against

MURGUIDO for his actions prior to January 31, 2014. A third video published by Dr. McDonough showed ROLLE repeatedly promising that Dr. McDonough would suffer no more retaliation from MURGUIDO or others.  This is a promise he failed to keep.

323.     In retaliation for Dr. McDonough publishing the videos, ROLLE initiated a police report, criminal complaint, and investigation. ROLLE, with the purpose of effectuating an arrest and eventual conviction, contacted CITY officer Detective MEAD to investigate Dr. McDonough.

324.     ROLLE's initial criminal complaint involved cyberstalking and alleged ROLLE, AQUINO, and MURGUIDO as the victims. Once MEAD began investigating, the charge became felony wiretapping.

325.     These attempted criminal charges evolved out of the videos Dr. McDonough published on YouTube. Defendants CITY, ROLLE, AQUINO, MURGUIDO, and MEAD filed charges purely as retaliation for Dr. McDonough exercising his First Amendment rights.

326.     Defendant MEAD reached out to three different agencies in an attempt to find someone to arrest Dr. McDonough. MEAD contacted MIAMI-DADE, the Miami-Dade State Attorney's Office (hereinafter "MDSAO") and the Florida Department of Law Enforcement (hereinafter "FDLE"). All three agencies refused to arrest Dr. McDonough.

327.     FDLE sent MEAD the documents Dr. McDonough had sent to FDLE when Dr. McDonough contacted them earlier in 2014, regarding the corruption within CITY police department. FDLE was already aware that Dr. McDonough had recorded ROLLE and AQUINO. FDLE provided MEAD with Dr. McDonough's good faith analysis of why his recording was lawful and constitutionally protected, providing a complete defense to any civil,

administrative, or criminal action taken as a result of the recording pursuant to Fla. Stat. § 934.10(2)(c).

328.    Defendants CITY, MEAD, ROLLE, AQUINO, and MURGUIDO, despite the law and facts showing otherwise, continued to pursue charges. Acting in their official capacity and using their influence as a government entity and law enforcement agency, Defendants CITY, MEAD, ROLLE, AQUINO, and MURGUIDO persuaded the MDSAO office to send Dr. McDonough a cease and desist letter.

329.    The cease and desist letter informed Dr. McDonough that he may not record police or police activity without first obtaining permission. It also stated that if Dr. McDonough recorded a police officer without first getting permission in the future, he would face felony prosecution.

330.    Defendants CITY, MEAD, ROLLE, AQUINO, and MURGUIDO were the instigators of this unlawful demand.

331.    Due to the unlawful order contained in the cease and desist letter and the irreparable harm to his First Amendment rights, Dr. McDonough was forced to file a civil suit seeking declaratory and injunctive relief based on the right to record police activity.

332.    Dr. McDonough has a clearly established right under the First Amendment, subject only to intermediate scrutiny, to record public officials in their official capacity while carrying out their official duties on public property when he is lawfully present. Further, public officials in Florida have no reasonable expectation of privacy in the performance of their official duties, and as such, the wiretap law, Fla. Stat. § 934.03, can never apply to a citizen recording his interactions with police officers in the performance of their duties.

71

333.     Defendants CITY, MEAD, ROLLE, AQUINO, and MURGUIDO infringed on Dr. McDonough's First Amendment right when they unlawfully instigated a criminal suit and coerced the State Attorney's Office to issue an unlawful order summarily curtailing and restricting Dr. McDonough's civil and constitutional rights.

334.     Defendants CITY, MEAD, ROLLE, AQUINO, and MURGUIDO retaliated against Dr. McDonough for exercising his clearly established free speech and free press rights under the Frist Amendment by maliciously filing frivolous criminal charges/complaints against Dr. McDonough.

335.     Defendants CITY, MEAD, ROLLE, AQUINO, and MURGUIDO acted in concert to deprive Dr. McDonough of his First Amendment rights.

336.     The conduct of Defendants CITY, MEAD, ROLLE, AQUINO, and MURGUIDO was objectively unreasonable and a violation of Dr. McDonough's clearly established Constitutional rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

## TWENTY-FOURTH CAUSE OF ACTION
### ABUSE OF PROCESS
### (Plaintiff Dr. McDonough, as to Defendants CITY, ROLLE, MEAD, MURGUIDO, and AQUINO)

337.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56 and 319 through 336, inclusive, above, as though set forth in full herein.

338.     Defendants CITY, MEAD, ROLLE, AQUINO, and MURGUIDO used the criminal and civil judicial system to attempt to silence and restrain Dr. McDonough from continuing to speak out about the abuses he suffered and from exercising his clearly established First Amendment rights.

339.     Defendants CITY, MEAD, ROLLE, AQUINO, and MURGUIDO used the judicial system to silence, intimidate, and discourage Dr. McDonough from freely exercising his First Amendment guaranteed rights of free speech and freedom of press.

340.     It is clear Defendants CITY, MEAD, ROLLE, AQUINO, and MURGUIDO's motives for attempting to initiate a criminal complaint against Dr. McDonough was not in furtherance of justice, but simply a tool to deny Dr. McDonough his rights and a continued show of force to keep Dr. McDonough in his place as a third-class citizen.

**CAUSES OF ACTION RELATED TO SPEAKING AT CITY COUNCIL MEETINGS**
**TWENTY-FIFTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of First Amendment Right – Free Speech, Petition for Redress**
**(Plaintiff Dr. McDonough, as to Defendants CITY, PORTER, and GRETSAS)**

341.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

342.     On November 20, 2014, at CITY Mayor PORTER's request, Dr. McDonough emailed PORTER evidence that ROLLE had destroyed records in violation of state and federal law.

343.     On January 15, 2015, Dr. McDonough attended the Homestead City Council Meeting. Manager GRETSAS stopped Dr. McDonough from speaking as soon as Dr. McDonough began to comment on how ROLLE had unlawfully backdated a destruction log by seventeen months to cover up for another officer.

344.     CITY's policy sets forth an open public comment section, granting three minutes to the public to speak openly. The policy was adopted in response to state law requirements. The public comment section is separate and apart from the public comments allowed on agenda items and allows open discussion upon any topic. The CITY created the public comment

section policy in response to Florida law requiring all municipalities to allow the citizens to speak.

345.    The rules of the meeting placed Mayor PORTER as the presiding officer. PORTER, as the presiding officer, neglected his duties to call GRETSAS out of order, as Dr. McDonough had the floor, under CITY's policy and the meetings rules.

346.    PORTER, acting as the presiding officer, allowed and then personally thanked GRETSAS for his actions in restricting Dr. McDonough's speech.  Whereas, GRETSAS had stopped Dr. McDonough mid-speech and publicly berated him for his mention of ROLLE and AQUINO, stopping Dr. McDonough from further speaking on the topic.

347.    Immediately prior to Dr. McDonough speaking critically of ROLLE, a group of individuals were allowed to openly and freely speak to praise ROLLE and present him with an award. The meeting was then disrupted so photographs could be taken with ROLLE. These actions demonstrate the viewpoint/content-based restriction against Dr. McDonough's speech and petition rights. Further, this left Dr. McDonough with no ample alternate channels of communication.

348.    Defendants Mayor PORTER and Manager GRETSAS, the highest elected and appointed public officials for CITY respectively, created a prior restraint against Dr. McDonough's free exercise of speech and right to petition during the public comments section of the meeting simply because they did not like or agree with the content and viewpoint expressed and did not want it on the official record.

349.    Defendants GRETSAS and PORTER, like all other named Defendants in this suit, acted adversely towards Dr. McDonough and his constitutional and civil rights merely because he was critical of law enforcement and local government.

350.     At the February 18, 2015 city council meeting, PORTER upheld the prior restraint against Dr. McDonough's rights and again refused to let him finish speaking critically of ROLLE and CITY officers. PORTER stated this decision upon his being able to anticipate the content of Dr. McDonough's speech. Upon direct questioning by Dr. McDonough, asking if the CITY was going to continue to violate his First Amendment rights, PORTER responded, "That's your opinion of what's happening."

351.     Dr. McDonough questioned PORTER about being cut off at the last meeting. PORTER stated he supported GRETSAS and his actions and that he (PORTER) was controlling the decorum of the meeting.  PORTER stated that what Dr. McDonough was about to say at the January meeting was improper and if he tried to state it again it would still be improper, thereby prohibiting Dr. McDonough's speech simply on its content and viewpoint creating a prior restraint.  Then, PORTER went further and attempted to discredit Dr. McDonough by accusing him of slandering ROLLE.

352.     Prior to the March 2015 city council meeting, PORTER enacted an unconstitutional decorum policy directly in response to Dr. McDonough speaking at earlier Ccity council meetings.

353.      News articles were published in both the local South Dade News Leader and in the Miami-Herald, about this policy. The Miami-Herald story included quotes from Dr. McDonough.

354.     The decorum policy allows the presiding officer (Mayor) to ban speakers who violate the policy from a further audience before the Defendant CITY's council. This is the case unless a majority of the council votes to overturn the Mayor's ban.

355.     This decorum policy allows Mayor PORTER to arbitrarily ban a citizen simply because he does not like or agree with the content or viewpoint being expressed. Eventually anyone who speaks against the council, CITY, law enforcement, or any of its agents would be banned from the meetings, cutting off their fundamental rights to redress the government, as guaranteed by the First Amendment.

356.     The decorum policy allows CITY to exclude anyone who makes impertinent or slanderous comments or who becomes boisterous while speaking. The policy only allows one person at the podium unless otherwise approved by the presiding officer and also forbids applause.

357.     This policy was enacted specifically to target Dr. McDonough and keep him from speaking openly and freely in CITY's council meetings.

358.     CITY regularly engages in selective enforcement of the decorum policy. At one meeting a constituent received applause for his statements critical of CITY. The audience was immediately told applause was forbidden and was threatened with physical and possibly violent removal from the meeting if they applauded again. Later in the same meeting, PORTER praised his CITY police officers and the officers in attendance, including ROLLE, were allowed to applaud.  If applause portrays the CITY in a positive light it is allowed. If not, it is forbidden.

359.     At the July 2016 CITY's council meeting, Dr. McDonough and other free speech advocates, along with victims of police abuse, planned to speak out about CITY police abuse. The CITY knew about this beforehand. The decorum policy forbids anyone to stand in the back of the room or in the aisle and there was more than ample seating present. However, CITY law enforcement officers, in violation of the decorum policy, were allowed to stand and form a line

filling in the walls above and behind the audience and speakers, in a willful and intimidating show of force aimed at silencing critical speech.

360.     Defendants CITY, PORTER, and GRETSAS have enacted CITY's decorum policy aimed at curtailing free speech, especially speech that is critical of the government. This decorum policy not only targets a specific citizen (Dr. McDonough), but also works as a deterrent creating a chilling effect on the exercise of free speech by all citizens.

361.     Defendants CITY, PORTER, and GRETSAS have, time and time again, selectively enforced the decorum policy, singling out dissenters, while giving a free pass to those who agree or praise the CITY and law enforcement.

362.     Defendants CITY, PORTER, and GRETSAS acted in concert to deprive Dr. McDonough of his First Amendment rights to address the council under established procedure, denying Dr. McDonough due process under the Fifth Amendment.

363.     The conduct of Defendants CITY, PORTER, and GRETSAS was objectively unreasonable and a violation of Dr. McDonough's clearly established Constitutional rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

**CAUSES OF ACTION RELATED TO UNLAWFUL DENIAL OF FIREARMS**
**TWENTY-SIXTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Second Amendment Right – Right to Bear Arms**
**Violation of Fourth Amendment Right – Right to Property**
**Violation of Fifth Amendment Right – Right to Due Process**
**(Plaintiff Dr. McDonough, as to Defendants CITY, MIAMI-DADE, MURGUIDO, AQUINO, SURMAN, and ROLLE)**

364.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, 170 through 194 and paragraphs 301 through 318, inclusive, above, as though set forth in full herein.

365.     Dr. McDonough has a Second Amendment right to keep and bear arms for the lawful purpose of self-defense.

366.     Defendants CITY, MURGUIDO, AQUINO, SURMAN, and ROLLE acting in concert had multiple civil injunctions issued against Dr. McDonough. Each injunction required Dr. McDonough to turn over his firearms leaving him helpless to defend himself and his family.

367.     Defendants CITY, MURGUIDO, AQUINO, SURMAN, and ROLLE knew or should have known that the statements given to secure the injunctions were false and only given in an attempt to retaliate against Dr. McDonough and to keep him from reporting police misconduct and abuse. False statements used to deprive someone of their rights and/or liberties violates due process.

368.     Defendants CITY, MURGUIDO, AQUINO, SURMAN, and ROLLE knew that the injunctions would require Dr. McDonough turn over any firearms and forbid him from use or possession of a firearm. Defendants CITY, MURGUIDO, AQUINO, SURMAN, and ROLLE chose to pursue injunctions because they knew it would restrict Dr. McDonough's right to bear arms.

369.     Defendant MIAMI-DADE, without lawful authority and in violation of Dr. McDonough's Second Amendment rights and state law, did repeatedly refuse to return Dr. McDonough's firearms after dismissal of the frivolous injunctions.

370.     Defendants CITY, MIAMI-DADE, MURGUIDO, AQUINO, SURMAN, and ROLLE acted in concert to deprive Dr. McDonough of his Second and Fourth Amendment rights to bear arms and keep lawfully acquired personal property.

371.     The conduct of Defendants CITY, MIAMI-DADE, MURGUIDO, AQUINO, SURMAN, and ROLLE was objectively unreasonable and a violation of Dr. McDonough's

clearly established Constitutional rights under the Second, Fourth, Fifth, and Fourteenth

Amendments and 42 U.S.C. § 1983.

### CAUSES OF ACTION RELATED TO BLOCKING OF COMPLAINTS
#### TWENTY-SEVENTH CAUSE OF ACTION
#### VIOLATION OF 42 U.S.C. § 1983
#### Violation of Fifth Amendment Right – Substantive Due Process
#### Violation of Fourteenth Amendment Right – Substantive Due Process
#### (Plaintiff Dr. McDonough, as to Defendants CITY, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, MONROE, RAMSAY, SCIBILIA, GOMEZ, MIAMI-DADE, ARTIME, PATTERSON, RYAN, CAMERON, COOPER, LEE, BYRD, MONROE, RAMSAY, SCIBILIA, and GOMEZ)

372.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in

paragraphs 45 through 56, 145 through 194, 228 through 300, and 341 through 363, inclusive,

above, as though set forth in full herein. Particularly paragraphs 170 through 194, 228 through

249 and 341 through 363 as applied to Defendant CITY and employees; paragraphs 149 through

169 and 250 through 289 as applied to Defendant MIAMI-DADE and employees; and

paragraphs 290 through 300 as applied to Defendant MONROE and employees.

373.     Defendants CITY, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO,

MONROE, RAMSAY, SCIBILIA, GOMEZ, MIAMI-DADE, ARTIME, PATTERSON,

RYAN, CAMERON, COOPER, LEE, BYRD, MONROE, RAMSAY, SCIBILIA, and GOMEZ

aggressively acted in a way to deny Dr. McDonough his substantive due process rights by

continually blocking him from the procedure for filing a formal complaint(s) in order to detail

the abuses he suffered and by preventing him from speaking publicly, as is his right by law.

374.     To date, Defendants CITY, PORTER, GRETSAS, ROLLE, AQUINO,

MURGUIDO, MONROE, RAMSAY, SCIBILIA, GOMEZ, MIAMI-DADE, ARTIME,

PATTERSON, RYAN, CAMERON, COOPER, LEE, BYRD, MONROE, RAMSAY,

SCIBILIA, and GOMEZ have either not allowed Dr. McDonough to file a formal complaint(s)

detailing the unlawful conduct and deprivation of rights that occurred on October 29[t] 2012 or the actions following. In addition, Defendants have improperly scuttled the complaint(s) in bad faith while making false statements regarding the facts, all while preventing Dr. McDonough from speaking publicly on matters of public concern.

375.     Defendants CITY, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, MONROE, RAMSAY, SCIBILIA, GOMEZ, MIAMI-DADE, ARTIME, PATTERSON, RYAN, CAMERON, COOPER, LEE, BYRD, MONROE, RAMSAY, SCIBILIA, and GOMEZ, acting individually and in concert, deliberately and maliciously delayed and refused to take a complaint(s) from Dr. McDonough.

376.     Defendants CITY, MIAMI-DADE, and MONROE have internal policy, in accordance with state and federal law that governs the receiving of complaints regarding officer misconduct. These policies are to ensure citizens' First Amendment rights of free speech and petitioning for redress are upheld.

377.     Dr. McDonough had a fundamental right to due process which included filing a complaint(s) with the CITY, MIAMI-DADE, and MONROE regarding misconduct of officers and abuses of citizens.

378.     Defendants CITY, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, MONROE, RAMSAY, SCIBILIA, GOMEZ, MIAMI-DADE, ARTIME, PATTERSON, RYAN, CAMERON, COOPER, LEE, BYRD, MONROE, RAMSAY, SCIBILIA, and GOMEZ violated Dr. McDonough's Fifth and Fourteenth Amendment Substantive Due Process rights when they denied him access to the internal system of redress.

379.     Defendants CITY, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, MONROE, RAMSAY, SCIBILIA, GOMEZ, MIAMI-DADE, ARTIME, PATTERSON,

RYAN, CAMERON, COOPER, LEE, BYRD, MONROE, RAMSAY, SCIBILIA, and GOMEZ maliciously blocked Dr. McDonough's access to procedures for filing internal and/or criminal complaints. The procedures were created by local policy and state law. Denial of access to those procedures is denial of due process.

380.    Defendants CITY, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, MONROE, RAMSAY, SCIBILIA, GOMEZ, MIAMI-DADE, ARTIME, PATTERSON, RYAN, CAMERON, COOPER, LEE, BYRD, MONROE, RAMSAY, SCIBILIA, and GOMEZ acted in concert to deprive Dr. McDonough of his First and Fourteenth Amendment rights.

381.    The conduct of Defendants CITY, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, MONROE, RAMSAY, SCIBILIA, GOMEZ, MIAMI-DADE, ARTIME, PATTERSON, RYAN, CAMERON, COOPER, LEE, BYRD, MONROE, RAMSAY, SCIBILIA, and GOMEZ was objectively unreasonable and violated Dr. McDonough's clearly established rights under Article I, Section 5, Florida Constitution, Section A.5 of the Citizens' Bill of Rights of the MIAMI home rule charter, the First and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983 to petition the police department(s) or CITY council for redress.

### CAUSES OF ACTION RELATED TO DEFAMATION
### TWENTY-EIGHTH CAUSE OF ACTION
### DEFAMATION PER SE
#### (Plaintiffs Dr. McDonough and V. McDonough,
#### as to Defendant ROLLE)

382.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 56, inclusive, above, as though set forth in full herein.

383.    Anonymous CITY and MIAMI-DADE officers did publish false statements about Plantiffs Dr. McDonough and V. McDonough.  These statements were deliberately meant

to increase the danger to Plaintiffs in any future encounter with law enforcement, discredit them in any future encounters, tarnish their respective reputations in the community and in their professions, and were made to be punitive and retaliatory for Dr. McDonough's exercise of protected rights.

384.     The statements were published in online blogs and forums such as www.leoaffairs.com. Many of these anonymous posters are believed to already be individually named herein. Additionally, false and/or harmful statements were published by the named Defendants on official police reports, medical records, incident reports, internal investigation reports, meeting minutes, meeting notes, and memoranda, as well as any other official CITY, MIAMI-DADE, MONROE, or CAMPBELL documents.

385.     The statements directly and specifically refer to Plaintiffs Dr. McDonough and V. McDonough, often calling them by their names or McDonough's wife when referring to V. McDonough, including numerous criminally libelous statements made about V. McDonough.

386.     As alleged above, the anonymous posters have repeatedly published false statements about Plaintiffs to third parties. Those false statements include claims that 1) Dr. McDonough is aggressive or combative; 2) Dr. McDonough is "psychotic;" 3) Dr. McDonough is a "schizophrenic" who is delusional; 4) Dr. McDonough considers himself a "sovereign citizen;" 5) Dr. McDonough is threatening and aggressive; 6) Dr. McDonough and his wife are crazy; 7) Dr. McDonough "has a history of clinically diagnosed mental health problems;" 8) Dr. McDonough is a "Baker Act," who stalks police; 9) Dr. McDonough committed/commits theft of government property/resources; 10) Dr. McDonough was committed to a mental institution because V. McDonough sleeps with cops; and 11) that Dr. McDonough's children are not his because V. McDonough sleeps with cops.

387.     ROLLE, while giving statements under oath to the FDLE regarding Dr. McDonough's official misconduct complaint against him, did state that Dr. McDonough gave him no documentation at the February 2014 meeting. This falsely implied that McDonough was a liar and had committed crimes himself by giving false testimony and filing false criminal complaints, against police officers no less.

388.     ROLLE also falsely and maliciously stated to the FDLE agents investigating him that both Dr. McDonough and V. McDonough were crazy. These statements by ROLLE were not made in the performance of his official duties, but as a suspect in a felony investigation.

389.     The CITY and MIAMI-DADE both later blocked Dr. McDonough's and V. McDonough's complaints regarding the criminal libel and unlawful retaliation against them and their family.   Further, ROLLE had personally defamed them both before blocking their complaint. This demonstrates a pattern of not acting on and/or scuttling complaints filed or attempted to be filed by citizens against police officers.

**CAUSES OF ACTION RELATED TO THE TOTALITY OF TRANSGRESSIONS**
**TWENTY-NINTH CAUSE OF ACTION**
**MONELL CLAIM**
**(Plaintiffs Dr. McDonough and V. McDonough,**
**as to Defendants CITY, MIAMI-DADE, and MONROE)**

390.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 389, inclusive, above, as though set forth in full herein. Particularly paragraphs 45 through 148, 170 through 249, and 301 through 389 as applied to defendant CITY; paragraphs 45 through 116, 149 through 227, 250 through 300, and 364 through 381 as applied to defendant MIAMI-DADE; and paragraphs 45 through 111, 170 through 189, 195 through 222, 290 through 300, and 372 through 381 as applied to defendant MONROE.

391.     A local unit of government can be held liable under 42 U.S.C. § 1983 when the alleged constitutional violations are caused by "policy statement, ordinance, regulation or decision official adopted or promulgated." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690-91 (1978).

392.     The constitutional damages to Plaintiffs were proximately caused by policy and customs, through ratification of unconstitutional behavior, failure to properly train supervise or discipline, and by improper hiring and retention.

393.     Defendant CITY is liable under *Monell* for a) CITY's policy and cooperative agreement with MIAMI-DADE which caused the October 29, 2012 detention to be unreasonably and unconstitutionally prolonged; b) ROLLE, aware of previous incidents factually similar to the October 29, 2012 retaliation, involving another citizen, failed to take appropriate action, properly train, supervise and discipline his subordinates even after such abuses were brought to his attention for a second time; c) ROLLE failed to properly screen prospective employees he hired, thereby hiring officers who were forced out of other departments for criminal and unethical behavior including MURGUIDO and BUCHANAN; d) ROLLE personally retaliated against Dr. McDonough, maliciously defamed Dr. McDonough and his wife, unlawfully destroyed public records and lied under oath to support the cover up begun by his officers and continued by him; and e) PORTER, GRETSAS, and the entire CITY council were presented evidence of ROLLE's crimes and those within the CITY's police department, while PORTER and GRETSAS deliberately acted to cover for ROLLE and others while further infringing upon Dr. McDonough's First Amendment rights.

394.     Defendant MIAMI-DADE is liable under *Monell* for a) MIAMI-DADE's policy and cooperative agreement with CITY caused the October 29, 2012 detention to be

unreasonably and unconstitutionally prolonged; b) MIAMI-DADE has a custom or policy of performing unlawful searches, as evidenced by RYAN's statements above; c) MIAMI-DADE has a direct policy violating the First Amendment right to gather information about what public officials do on public property, in the performance of their official duties.

395.    Defendants CITY, MIAMI-DADE, and MONROE are liable for Dr. McDonough's injuries due to standard customs and practices and unlawful behavior, which has been ratified by the subsequent actions of the respective departments.

396.    Further, Defendants CITY, MIAMI-DADE, and MONROE blocked or improperly acted on Plaintiffs' IA and/or criminal complaints more than once, demonstrating a custom or practice of behavior in each department.  Additionally, all correspondence between Dr. McDonough and the IA departments for CITY, MIAMI-DADE, and MONROE were copied to the heads of the respective agencies at the time, i.e. ROLLE, PATTERSON, and RAMSAY respectively.  These final policy makers all failed to take appropriate corrective action(s), thereby ratifying said abusive behavior.

397.    Defendants ROLLE, PATTERSON, and RAMSAY in their positions with CITY, MIAMI-DADE, and MONROE respectively, had a duty to train and supervise their subordinate's work to ensure they operate in a manner that does not violate the rights of citizens of Florida, who are protected by the United States Constitution and the laws of the State of Florida.  However, despite knowledge and acknowledgement of the misconduct within their respective departments, ROLLE, PATTERSON, and RAMSAY at all times material hereto, failed to properly correct the obvious deficiencies which caused the injuries and damages to Dr. McDonough.  This inaction allowed said misconduct to be repeated and caused and allowed further injuries to be inflicted upon Plaintiffs Dr. McDonough and V. McDonough.

398.     The failure of ROLLE, PATTERSON, and RAMSAY to properly train, supervise, and discipline officers under their respective commands ratified the unconstitutional behavior of their subordinates and was the proximate cause of the deprivation of rights suffered by Plaintiffs Dr. McDonough and V. McDonough.

399.     Defendants ROLLE, AQUINO, PATTERSON, ARTIME, BYRD, RYAN, CAMERON, COOPER, RAMSAY, and SCIBILIA abdicated their policymaking and oversight responsibilities, thereby allowing these constitutional violations to occur and continue.  ROLLE, PATTERSON, and RAMSAY are final policy makers for their respective municipalities, whereas AQUINO, ARTIME, BYRD, RYAN, CAMERON, COOPER, and SCIBILIA are de facto policy makers for their respective municipalities due to the positions and responsibilities they hold respectively.

400.     Wherein ROLLE, AQUINO, ARTIME, and RYAN directly and actively retaliated against Dr. McDonough's rights when he spoke out about abuse of officers under their respective commands/supervision. PATTERSON, BYRD, CAMERON, COOPER, RAMSAY, and SCIBILIA were, at best, callously and recklessly indifferent to these rights violations, even while having knowledge of the underlying situation, and failed to act or properly monitor the situation after being put on notice.

401.     Mayor PORTER and Manager GRETSAS are final policy makers for the CITY and ROLLE's employer.  Not only were they made aware of the actions of ROLLE and his subordinates, they also repeatedly violated Dr. McDonough's rights as final policy makers for the CITY themselves.  They did this by violating Dr. McDonough's First Amendment rights, while helping CITY officers cover up their crimes against Dr. McDonough.

402.     Defendants CITY, MIAMI-DADE, and MONROE have liability for the deprivations of the rights of Dr. McDonough due to CITY, MIAMI-DADE, and MONROE policy, customs, and practices having the force of policy and ratification of the unconstitutional behavior of subordinates by the final policy makers of the CITY, MIAMI-DADE, and MONROE. The customs and policies, the failure to train, and the ratification of subordinates' unlawful behavior amounts to deliberate indifference to the rights of person with whom the police come into contact.

403.     The CITY, MIAMI-DADE, and MONROE are liable for the damages incurred by Dr. McDonough as outlined above, by and through the actions of their respective employees.

**THIRTIETH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Plaintiffs Dr. McDonough and V. McDonough, as to ALL Defendants except MONROE)**

404.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 389, inclusive, above, as though set forth in full herein.

405.     Defendants have a duty to Dr. McDonough to act in accordance with his constitutional and civil rights, and to up hold the law.

406.     As detailed above on many occasions, the Defendants individually and in concert acted to deprive Dr. McDonough of his First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights.

407.     Not only did Defendants deprive Dr. McDonough of those rights but they actively retaliated against him, his wife, and his family, attempting to silence him by bringing criminal charges, civil injunctions, blocking speech, detaining him, threatening him, arresting him, seizing his firearms, as well as defaming him and his wife.

408.     Defendants engaged in extreme and outrageous behavior through their collusion and individual actions taken to deny Dr. McDonough his constitutional rights, when they retaliated against him for speaking freely and openly about police misconduct and abuse.

409.     Defendants' conduct was intentional and malicious and done solely for the purpose of humiliating, punishing, and causing Dr. McDonough and V. McDonough great mental anguish and emotional physical distress.

## THIRTY-FIRST CAUSE OF ACTION
### Loss of Consortium
### (V. McDonough, as to ALL Defendants except MONROE)

410.     Plaintiff V. McDonough hereby realleges and incorporates by reference the allegations set forth in paragraphs 45 through 409, inclusive, above, as though set forth in full herein.

411.     At all relevant times complained of herein Dr. McDonough and V. McDonough were lawfully married under the laws of Florida.

412.     The actions of the Defendants caused Dr. McDonough to suffer from anxiety and depression. Due to the abuses Dr. McDonough suffered, he withdrew physically and emotionally from his wife and family.

413.     To date Dr. McDonough sleeps in a separate room from his wife due to fear of violent retaliation against himself and/or his family.

414.     Defendants' actions caused Dr. McDonough to suffer from extreme emotional stress, which strained inter-family relationships. Additionally, it has left Dr. McDonough unable to be intimate with his wife for over two years, leaving their relationship damaged and frayed.

415.     As a direct and proximate result of the acts described above, V. McDonough has suffered loss of companionship, support, and intimacy of her husband Dr. McDonough.

## THIRTY-SECOND CAUSE OF ACTION
### VIOLATION OF 18 U.S.C. § 1964
**Violation of Fourteenth Amendment Right – Violations of the Racketeer Influenced and Corrupt Organizations Act (RICO)**
**(Plaintiffs Dr. McDonough and V. McDonough, as to Defendants CITY, MIAMI-DADE, MONROE, CAMPBELL, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, CRUZ, SNYDER, BUCHANAN, PASQUARELLA, ZAVALETA, MEAD, ARZUAGA, BLANCO, PEARCE, SURMAN, RAMSAY, SCIBILIA, GOMEZ, PATTERSON, ARTIME, BYRD, DIAZ, LEE, RYAN, CAMERON, ALVAREZ, WEBSTER, D. RODRIGUEZ, ZAPATAS, DOE, COOPER, SUAREZ, and E. RODRIGUEZ)**

416.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 45 through 415, inclusive, above, as though set forth in full herein.

417.     Defendants CITY, MIAMI-DADE, MONROE, CAMPBELL, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, CRUZ, SNYDER, BUCHANAN, PASQUARELLA, ZAVALETA, MEAD, ARZUAGA, BLANCO, PEARCE, SURMAN, RAMSAY, SCIBILIA, GOMEZ, PATTERSON, ARTIME, BYRD, DIAZ, LEE, RYAN, CAMERON, ALVAREZ, WEBSTER, D. RODRIGUEZ, ZAPATAS, DOE, COOPER, SUAREZ, and E. RODRIGUEZ and/or their employees are involved in a continuing conspiracy and retaliation against Dr. McDonough's rights.

418.     As detailed above, the acts by Defendants were directed to a specific scheme and purpose against Dr. McDonough and his right to petition, document, and expose evidence against police abuse.

419.     The documented pattern of racketeering activity by Defendants in the instant scheme and other schemes include the following predicate acts: 1) conspiracy to falsely arrest and detain citizens, i.e. kidnapping; 2) conspiracy to falsify official reports and documents; 3) conspiracy to destroy evidence and public records; 4) conspiracy to cover up police abuse; 5) conspiracy to intimidate families of police shooting victims; 6) conspiracy to intimidate and target activists and journalists and their families; 7) conspiracy to create false charges in

retaliation for free speech; 8) drug trafficking; 9) conspiracy to obstruct justice; 10) conspiracy

to tamper with evidence; 11) conspiracy to plot murder; 12) gun running; and 13) conspiracy to

commit grand theft. In the instant scheme, each Defendant is either jointly or individually liable,

for the retaliations and violations described herein.    However, the Defendants and the

organizations they are associated with are involved in multiple other racketeering schemes with

other targets and objectives aside from the scheme targeting Dr. McDonough and his family.

420.    In a separate racketeering scheme which CITY is involved in, CITY officers

MURGUIDO and BLANCO also named herein falsely arrested, i.e. kidnapped, a senior citizen

Dr. Rosemary Brackett and falsified their reports to terrorize her from filing a complaint for

their actions against her son. This was done to cover for their abuse of her mentally and

physically disabled adult son which included placing a gun to his head and striking him with a

baton. To cover up their abuse, the officers arrested Dr. Bracket for DUI, falsely claiming she

had urinated and soiled herself, and that she refused to take a breathalyzer. Public records prove

these allegations against Dr. Brackett to be false. This is not the only other racketeering scheme

with a different target and/or objective upon which CITY and/or its officers have participated.

CITY officers, including ROLLE, even retaliated against innocent officers to cover the

corruption and records destruction.

421.    In a separate racketeering scheme, MIAMI-DADE officer Ralph MATA was

involved in multiple schemes with an international drug trafficking organization wherein

MATA smuggled drugs and guns and plotted murder against rival drug traffickers. These

actions were carried out in the United States and the Dominican Republic. Another MIAMI-

DADE officer has also recently been arrested for also working with the international drug

trafficking organization. This is not the only other racketeering scheme with a different target

and/or objective upon which MIAMI-DADE and/or its officers have participated. Further, named MIAMI-DADE defendant ARTIME was involved in fraudulently double-billing the MIAMI-DADE tax payers while claiming overtime when he was actually in Panama moonlighting for the Panamanian government. ARTIME even improperly used his authority to get upgrades to first-class for his flights.

422.     Defendants CITY, MIAMI-DADE, MONROE, CAMPBELL, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, CRUZ, SNYDER, BUCHANAN, PASQUARELLA, ZAVALETA, MEAD, ARZUAGA, BLANCO, PEARCE, SURMAN, RAMSAY, SCIBILIA, GOMEZ, PATTERSON, ARTIME, BYRD, DIAZ, LEE, RYAN, CAMERON, ALVAREZ, WEBSTER, D. RODRIGUEZ, ZAPATAS, DOE, COOPER, SUAREZ, and E. RODRIGUEZ, did commit against Dr. McDonough the acts of: kidnapping, tampering with a victim or witness, retaliating against a victim or witness, and obstruction of justice to include blocking complaints and blocking Dr. McDonough's acts of investigating this misconduct, as well as falsifying/fabricating official records and destruction of official records.

423.     The combined actions of Defendants taken against Dr. McDonough are not isolated events, but are related and continuous in an open-ended manner. The actions were all taken within a ten-year time frame and demonstrates criminal conduct of a continuing nature. The totality of actions and the continued nature of the retaliation against Dr. McDonough threatens repetitive abuse in the future and demonstrates that this is the regular way of doing business for the named Defendants.

424.     Defendants CITY, MIAMI-DADE, MONROE, CAMPBELL, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, CRUZ, SNYDER, BUCHANAN, PASQUARELLA, ZAVALETA, MEAD, ARZUAGA, BLANCO, PEARCE, SURMAN,

RAMSAY, SCIBILIA, GOMEZ, PATTERSON, ARTIME, BYRD, DIAZ, LEE, RYAN, CAMERON, ALVAREZ, WEBSTER, D. RODRIGUEZ, ZAPATAS, DOE, COOPER, SUAREZ, and E. RODRIGUEZ, in a continuous and open-ended manner, did participate in a racketeering scheme against Dr. McDonough, as well as other schemes unrelated to Dr. McDonough.   The actions of the Defendants directed towards Dr. McDonough and V. McDonough damaged their rights, business, and property. The actions of the Defendants herein amount to multiple, distinct, predicate acts including kidnapping, tampering with a victim or witness, retaliation against a victim or witness, and obstruction of justice.  These actions were connected in purpose and not isolated events.

425.     The conduct of Defendants CITY, MIAMI-DADE, MONROE, CAMPBELL, PORTER, GRETSAS, ROLLE, AQUINO, MURGUIDO, CRUZ, SNYDER, BUCHANAN, PASQUARELLA, ZAVALETA, MEAD, ARZUAGA, BLANCO, PEARCE, SURMAN, RAMSAY, SCIBILIA, GOMEZ, PATTERSON, ARTIME, BYRD, DIAZ, LEE, RYAN, CAMERON, ALVAREZ, WEBSTER, D. RODRIGUEZ, ZAPATAS, DOE, COOPER, SUAREZ, and E. RODRIGUEZ was objectively unreasonable and repeatedly violated Plaintiffs' clearly established rights under the First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, H.I.P.A.A., 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 18 U.S.C. 1964, and 18 U.S.C. § 2721.

## CONCLUSION

426.     As a direct and proximate result of the acts described above, Plaintiffs have suffered grievously enduring: 1) the loss of liberty and freedom; 2) mental and emotional injury, distress, pain, and suffering; 2) medical and psychological costs, bills, and expenses; 3) attorney's fees and associated litigation costs, such as bail costs, including bail amounts; 4)

incurred the loss of business wages and profits; and 5) incurred other special and general damages and expenses.

427.     The actions by said Defendants were committed maliciously, oppressively, and in reckless disregard of Plaintiffs' constitutional, statutory, and common law rights, sufficient for an award of punitive/exemplary damages against all Defendants and each of them.

428.     The actions by said RICO Defendants comprise multiple schemes, multiple predicate acts, and multiple targets sufficient for an award of treble damages against all RICO defendants.

**WHEREFORE,** Plaintiffs respectfully pray that this Court enter judgment against Defendants as follows:

A.  Issue a judgment declaring that the acts of the Defendants described herein violated Plaintiffs' Constitutional Rights;

B.  Award Compensatory Damages in favor of Plaintiffs for each cause of action;

C.  Award Punitive/Exemplary Damages in favor of the Plaintiffs for each cause of action;

D.  Award Treble Damages in favor of Plaintiffs for all damages, compensatory and punitive, awarded at trial against all RICO Defendants;

E.  Cost of suit and prosecution, including but not limited to subpoenas, depositions, expert witnesses, filing fees, and other reasonable expenses;

F.  Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

G.  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38-1 of the Local Rules, Plaintiff demands trial by jury for all the issues pleaded herein so triable; and

H.  Such other relief as this Honorable Court may deem just and appropriate.

This 25th day of August, 2017.

THE LAW OFFICE OF GARY S. OSTROW, P.A.
Intracoastal Building
3000 N.E. 30th Place, Suite 302
Fort Lauderdale, Florida  33306
Telephone:    (954) 566-4033
Facsimile:     (954) 566-1021
e-mail:  gostrow2@gmail.com


By:      /s/ Gary S. Ostrow
         GARY S. OSTROW
         Florida Bar No. 354694